1  David A. Tilem (Bar No. 103825)
   LAW OFFICES OF DAVID A. TILEM
2  206 North Jackson Street, Suite 201
   Glendale, California 91206
3  Tel: 818-507-6000  Fax: 818-507-6800
   Email: DavidTilem@TilemLaw.com
4
   Stephan A. Mills, (Bar No. 94166)
5  ZEMANEK & MILLS
   11845 W. Olympic Blvd., Suite 625
6  Los Angeles, California 90064-5020
   Tel: 310-473-8100 Fax: 310-445-3166
7
   Attorneys for Creditor Jason Rubin, as Co-Trustee
8  of the Cira Ross Qualified Domestic Trust

9

10                 UNITED STATES BANKRUPTCY COURT

11                 CENTRAL DISTRICT OF CALIFORNIA

12                    LOS ANGELES DIVISION

13 In re:                        )  Case No. 2:09-bk-10720-SB
                                 )
14 DAVID LEONARD ROSS,           )  Chapter 7
                                 )
15              Debtor.          )
                                 )
16 _____ )
                                 )
   JASON RUBIN, AS CO-TRUSTEE    )  Adv No. _____-SB
17 OF THE CIRA ROSS QUALIFIED    )
   DOMESTIC TRUST,               )
18                               )  COMPLAINT TO DETERMINE
                 Plaintiff,      )  ENTITLEMENT TO DISCHARGE AND
19                               )  DISCHARGEABILITY OF DEBTS
        v.                       )
20                               )  Date: [No Hearing Required]
   DAVID LEONARD ROSS,           )  Time:
21                               )  Ctrm:
                 Defendant.      )
22 _____ )

23 Plaintiff alleges and states as follows:

24                          I.

25               INTRODUCTORY ALLEGATIONS

26     1.    Plaintiff JASON RUBIN ("Rubin") is a Co-Trustee of the

27 Cira Ross Qualified Domestic Trust ("the Trust"). Rubin is also

28 the grand-nephew of Ysaac Ross ("Ysaac"), who passed away on or

1   about January 11, 2001.

2       2.   Defendant DAVID LEONARD ROSS ("Ross" or "Debtor") is the

3   Debtor in the above-referenced Chapter 7 proceeding which was

4   commenced by the filing of a voluntary petition on January 13, 2009

5   ("the Filing Date").

6       3.   On or about February 22, 2007 Rubin, on behalf of the

7   Trust, obtained a judgment (the "Judgment") against Ross in a

8   Riverside County Superior Court action entitled <u>Jason Rubin and</u>

9   <u>Cira Ross, as Co-Trustees of the Cira Ross Qualified Domestic Trust</u>

10  <u>v. David Ross et al.</u> bearing Case No. INC 031863 (the "State Court

11  Action").   The amount of the Judgment, without interest, is

12  approximately $1.8 Million.   A true and correct copy of the "Second

13  Augmented and Amended Judgment Against Both Defendants" is attached

14  as Exhibit "A".

15      4.   This complaint seeks a determination that the claims held

16  by Rubin on behalf of the Trust against Ross are not dischargeable

17  pursuant to various sub-parts of 11 U.S.C. §523(a).

18      5.   This complaint also seeks a determination that Ross

19  should not be entitled to a discharge pursuant to various sub-parts

20  of 11 U.S.C. §727(a).

21      6.   This Court has jurisdiction to consider the within action

22  pursuant to 28 U.S.C. §§1334, 157(a) and the Order of Reference

23  from the United States District Court for the Central District of

24  California.

25      7.   This is a "core" proceeding pursuant to 28 U.S.C.

26  §157(b)(2)(I) and (J) as to which the Court may render Judgment.

27      8.   Venue is proper pursuant to 28 U.S.C. §1409(a).

28  / / /

9.   Pursuant to an Order of the Court entered August 28, 2009, the last date to file a complaint under 11 U.S.C. §§523 or 727 is August 31, 2009.

10.   Rubin is informed and believes, and thereon alleges that Ross is liable for the acts and omissions of the law firm of Ross, Rose & Hammill, LLP (the "Ross Law Firm") because:

a.   Ross and the Ross Law Firm are alter egos - Ross was at all times herein mentioned the Managing Member of the Ross Law Firm and owner of a 99% interest therein;

b.   Ross so owned, controlled and dominated the Ross Law Firm that the Ross Law Firm was a mere sham and instrumentality of Debtor; and

c.   the Ross Law Firm acted as the agent, and pursuant to the specific instructions of Ross in engaging in the acts described below.

## II.

### BACKGROUND FACTS

11.   At the time of Ysaac's death, Ysaac's wife of approximately 50 years, Cira Ross ("Cira"), was 87 years of age and infirm.   A conservator of the person and of the estate of Cira Ross has since been appointed.

12.   A probate action for the estate of Ysaac entitled Estate of Ysaac Ross was filed in the Riverside County Superior Court ("the Probate Case") as Case No. INP 017504.

13.   Ross attempted to prevent Cira from obtaining a distribution from Ysaac's Estate.   Among other things, Ross unsuccessfully opposed Cira's petitions for a family allowance and for her spousal property on the basis that Cira and Ysaac were

1  purportedly not married.

2      14.  Cira initiated an elder abuse action in Riverside County

3  Superior Court, entitled <u>Ross v. Ross</u> (Case No. INC 025067) ("the

4  Elder Abuse Case").  The defendants in said action, including David

5  Ross, ultimately stipulated to the issuance of a preliminary

6  injunction restraining said defendants from, among other things,

7  contacting Cira directly or indirectly.

8      15.  On or about January 18, 2002, in Palm Springs,

9  California, Cira, Ross and various other parties, by and through

10  their respective counsel, entered into a full and complete

11  settlement of all claims related to the Probate Case (hereinafter,

12  the "Probate Case Settlement").  The terms of the Probate Case

13  Settlement were recited on the record in open court in the Probate

14  Case, on or about January 18, 2002.  Ross was present in Court on

15  said date and agreed on the record to be bound by the Probate Case

16  Settlement.

17      16.  In summary, the Probate Case Settlement:

18          a.   distributed $1 million to each of certain alleged

19      beneficiaries of the Estate subject to certain specified

20      contingencies, including Ross;

21          b.   provided for Cira's community property share of the

22      Probate Estate to bear the gift tax associated with the

23      distributions;

24          c.   left certain specific bequests set forth in

25      decedent's will intact;

26          d.   allocated the balance of the Probate Estate to be

27      distributed to Cira or her assignee; and

28          e.   included a mutual release of claims.

1     17.   The Probate Case Settlement was ultimately committed to

2    writing which was executed by the parties on or about April 9,

3    2002.   A true and correct copy of the same is attached hereto as

4    Exhibit "B".

5     18.   At all times mentioned herein, by virtue of an

6    irrevocable assignment dated March 17, 2002, the Trust was Cira's

7    assignee and successor in interest under the Probate Case

8    Settlement.   A true and correct copy of the same, without exhibits

9    thereto, is attached hereto as Exhibit "C".

10     19.   In accordance with the Probate Case Settlement, the sum

11    of approximately $300,000 was paid to Ross and each of the other

12    settling parties.   The balance, about $700,000 for each, was placed

13    in escrow accounts for Ross and each of the other settling parties

14    to be held for several years pending the occurrence of certain

15    specified contingencies ("the Escrow Accounts").

16     20.   Rubin is informed and believes that all sums held in the

17    Escrow Accounts have been released to Ross and the other settling

18    parties.

19     21.   On or about July 23, 2002, Ross, in the name of the Ross

20    Law Firm, filed a creditor claim in the Probate Case for $1.5

21    million (the "$1.5 million Claim") and another claim for $26,861.72

22    (collectively, "the Claims").

23     22.   The $1.5 million Claim appears to be based on an alleged

24    oral promise made to Ross by Ysaac in 1992 that, upon Ysaac's

25    death, Ross would receive certain specified real property in

26    payment for alleged legal services.

27    / / /

28    / / /

23.   On or about August 28, 2002, the Probate Estate caused to be filed in the Probate Case a document entitled:

Petition for Preliminary Distribution (Probate Code

Section 11620 et Seq.); and for Approval of Extraordinary

Attorneys' Fees and for Reduction in Bond (the

"Distribution Petition").

The Distribution Petition sought a court order approving, among other things, a preliminary distribution to the Trust of $15 million and a distribution to the Trust of specified interests in real property.

24.   A hearing on the Distribution Petition was duly noticed for October 1, 2002.  Notwithstanding the Probate Case Settlement, Ross appeared at the October 1, 2002 hearing and orally objected to the Distribution Petition.  Debtor's objection was the only objection made to the Distribution Petition and Ross succeeded in getting the hearing continued to October 28, 2002.

25.   On or about October 8, 2002, Ross filed written objections to the Distribution Petition.

26.   On or about October 25, 2002 - one court day before the October 28, 2002 hearing - Debtor filed, under the name of the Ross Law Firm, yet another set of written objections to the Distribution Petition.

27.   At the conclusion of the October 28, 2002 hearing, the Court continued the hearing on the Distribution Petition to November 22, 2002.

28.   Ross appeared at the November 22, 2002 hearing to further oppose the Distribution Petition and presented lengthy argument in support of his written and oral objections to the Distribution

1    Petition.

2         29.   During the November 22, 2002 hearing and on the record,

3    Ross stated as follows:

4         "I [Ross] just have one other comment, Your Honor.  And
          that is if they are not worried, then let me make this
5         suggestion.  I will withdraw all of my objections.  If
          they are so confident, let them release the funds we have
6         in escrow on January the 11th [2002], and I will have
          absolutely no problem . . . "[r]elease the funds on
7         January the 11th, and we will walk."

8         30.   At the conclusion of the November 22, 2002 hearing, the

9    Probate Court took the matter under submission. In a minute order

10   dated December 13, 2002, the Probate Court granted the Distribution

11   Petition, approving a preliminary distribution to the Trust with a

12   cash component of $10 million.

13        31.   In response to Ross' actions and on or about October 17,

14   2002, Rubin and Cira on behalf of the Trust, filed the State Court

15   Action which resulted in the Judgment.

**III.**

**FIRST CAUSE OF ACTION**

**(11 U.S.C. §523(a)(2)(A))**

19        32.   Rubin re-alleges the Introductory Allegations and the

20   Background Facts set forth above and incorporates them by this

21   reference as if fully set forth here.

22        33.   Pursuant to the Probate Case Settlement, Ross received $1

23   million tax free and a release of other claims.

24        34.   At the time Ross entered into the Probate Case Settlement

25   and as evidenced by his subsequent actions described above, Ross

26   had no intentions of honoring the agreement.

27   / / /

28   / / /

35.  The Trust's predecessor in interest, Cira, was induced to enter into and perform under the Probate Case Settlement as a result of Ross' false pretenses, or actual fraud.

36.  Had Cira been aware of Ross' true intentions, she would not have entered into the Probate Case Settlement.

37.  Cira reasonably relied on Ross' representations insofar as they were made by an attorney, made in open Court and reflected in a written settlement agreement which Ross signed.

38.  The Trust have been damaged according to proof.

## IV.

### SECOND CAUSE OF ACTION

### (11 U.S.C. §523(a)(6))

39.  Rubin re-alleges the Introductory Allegations and the Background Facts set forth above and incorporates them by this reference as if fully set forth here.

40.  The Probate Case Settlement included mutual releases intended to buy peace from Ross so that the Trust could obtain a distribution from the Probate Estate without his interference.

41.  Ross knowingly and unilaterally destroyed this benefit and misused process by filing further claims and by raising objections to the Distribution Petition in the Probate Case that he had previously waived and relinquished under the Probate Case Settlement.

42.  Ross had ulterior purposes and motivations, in so misusing process, in that, after accepting the benefits of the Probate Case Settlement, Ross resumed his campaign to thwart distributions from the Probate Estate by filing further claims and objections, and he did so for the purpose of extorting concessions

1  over and above those afforded him under the Probate Case

2  Settlement.

3      43.  That the $1.5 million Claim was filed for an improper

4  purpose is further evidenced by the fact that it is based on an

5  alleged oral promise made many years earlier involving real

6  property and is therefore barred by the applicable statute of

7  frauds and statute of limitations.

8      44.  Among the concessions Ross sought was a further

9  modification (actually the elimination) of the agreed upon

10 conditions to release of the remaining $700,000 in his Escrow

11 Account.

12     45.  Ross' actions were willful and malicious in the misuse of

13 process for an improper purpose.

14     46.  Ross' actions resulted in a willful and malicious injury

15 to the property of the Trust and to its predecessors in interest.

16     47.  The Trust has been damaged according to proof.

17 **V.**

18 **THIRD CAUSE OF ACTION**

19 **(11 U.S.C. §523(a)(6))**

20     48.  Rubin re-alleges the Introductory Allegations and the

21 Background Facts set forth above and incorporates them by this

22 reference as if fully set forth here.

23     49.  On or about October 18, 2005, the court in the State

24 Court Action imposed monetary discovery sanctions on Ross, the Ross

25 Law Firm and their counsel of record, Robert Gentino, jointly and

26 severally, in the sum of $966.  According to the order thereon,

27 said sum was to be paid to the Plaintiffs in that action, through

28 their counsel, on or by November 8, 2005.

50.   On or about March 10, 2006, the court in the State Court Action imposed additional monetary discovery sanctions on Ross, the Ross Law Firm and their counsel of record, Robert Gentino, jointly and severally, in the sum of $9,724.  According to the order thereon, said sum was to be paid to the Plaintiffs in that action within thirty days.

51.   Ross has violated the aforesaid orders by refusing to pay any portion of the aforesaid sanctions to the Trust.  The aforesaid sums, with interest thereon at the legal rate of 10% per annum from the respective dates upon which payment fell due, remain due and owing from Debtor to the Trust, less any amounts which the Trust obtained by levying on the assets of Robert Gentino.

## VI.

### FOURTH CAUSE OF ACTION

### (11 U.S.C. §727(a)(5))

52.   Rubin re-alleges the Introductory Allegations and the Background Facts set forth above and incorporates them by this reference as if fully set forth here.

53.   On or about February 20, 2002, Ross executed a loan application in favor of Union Bank of California in which he disclosed assets and a net worth of more than $5 million and a net monthly income of more than $32,000. A true and correct copy of the loan application is attached here to as Exhibit "D".  Thereafter, as set forth above, Ross received an additional $1 million from the Probate Case Settlement.

54.   In marked contrast to the disclosures in the financial statement provided to Union Bank, Ross represents in his bankruptcy petition, schedules and Statement of Financial Affairs that his

1 | assets amount to only $102,950.55 and his current monthly income is

2 | a net negative of $2,200 per month.  The bankruptcy documents offer

3 | no information regarding the disposition of these assets.

4 |     55.  Ross has failed to offer any explanation regarding the

5 | loss or dissipation of these assets.

6 | **VII.**

7 | **FIFTH CAUSE OF ACTION**

8 | **(11 U.S.C. §727(a)(3))**

9 |     56.  Rubin re-alleges the Introductory Allegations and the

10 | Background Facts set forth above and incorporates them by this

11 | reference as if fully set forth here.

12 |     57.  Rubin is informed and believes, and thereon alleges that

13 | Ross has failed to maintain adequate recorded information from

14 | which his financial condition or business transactions might be

15 | ascertained.

16 | **VIII.**

17 | **FIFTH CAUSE OF ACTION**

18 | **(11 U.S.C. §727(a)(2)(A))**

19 |     58.  Rubin re-alleges the Introductory Allegations and the

20 | Background Facts set forth above and incorporates them by this

21 | reference as if fully set forth here.

22 |     59.  Rubin is informed and believes that, with intent to

23 | hinder, delay or defraud a creditor or an officer of the estate,

24 | Ross has transferred, removed, destroyed, mutilated or concealed,

25 | or has permitted to be transferred, removed, destroyed, mutilated

26 | or concealed property of the estate within one year before the

27 | Filing Date.

28 | / / /

1    60.    As but one example, Rubin is informed and believes, and

2    thereon alleges, that within weeks before the Filing Date, Ross

3    permitted or arranged for the purported "foreclosure" of his

4    residence at 130 N. Martel Ave., Los Angeles, by his counsel of

5    record in the State Court Action, Robert Gentino. The purported

6    foreclosure was undertaken pursuant to a deed of trust signed on

7    the same date that the Judgment was entered in the Trust's favor

8    and against Debtor in the State Court Action.    Rubin is informed

9    and believes that the purported foreclosure was a sham and a

10    fraudulent transfer intended to conceal Ross' assets from his

11    creditors.

12    61.    This is not the first instance in which Ross has misused

13    the legal process to conceal assets from his creditors.    In Court

14    documents Ross has previously admitted to undertaking a fraudulent

15    Nevada divorce so as to conceal assets from his creditors.

16    62.    Rubin is informed and believes, and thereon alleges that

17    other such pre-petition transfers will be discovered through the

18    discovery process.

19                                    **IX.**

20                          **SIXTH CAUSE OF ACTION**

21                        **(11 U.S.C. §727(a)(4))**

22    63.    Rubin re-alleges the Introductory Allegations and the

23    Background Facts set forth above and incorporates them by this

24    reference as if fully set forth here.

25    64.    Rubin is informed and believes, and thereon alleges, that

26    Ross' bankruptcy petition, schedules and Statement of Financial

27    Affairs do not fully, completely and accurately disclose all of his

28    assets as of the filing, and that Ross has concealed such assets

1 from this Court, from the bankruptcy trustee and from his

2 creditors.

3 Dated: August 31, 2009                    LAW OFFICES OF DAVID A. TILEM

4

5                                           By:

6                                               David A. Tilem

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Exhibit A**

1 | Stephan A. Mills, Esq., Bar No. 94166
ZEMANEK & MILLS
2 | A Professional Corporation
11845 W. Olympic Boulevard, Suite 625
3 | Los Angeles, California  90064-5020
PH: 310/473-8100  FAX:  310/445-3166
4 |
James D. Turner, Esq., Bar No. 72979
5 | Anderholt & Turner LLP
74-770 Highway 111, Suite 201
6 | Indian Wells, CA 92210
PH: 760/674-0998 FAX: 760/674-0925
7 |

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

OCT 0 9 2008
Z. Perez

ANV
OCT 1 7 2008

8 | Attorneys for Plaintiffs
Jason Rubin and Cira Ross,
9 | as Co-Trustees of the Cira
Ross Qualified Domestic
10 | Trust

11 |       SUPERIOR COURT OF THE STATE OF CALIFORNIA

12 |               COUNTY OF RIVERSIDE

13 | JASON RUBIN and CIRA ROSS,      ) CASE NO.: INC 031863
Co-Trustees of the Cira Ross   )
14 | Qualified Domestic Trust,       ) **SECOND AUGMENTED AMENDED**
) **JUDGMENT AGAINST BOTH**
15 |              Plaintiff,          ) **DEFENDANTS**
)
16 |     vs.                         )
)
17 | David Ross, Ross, Rose &        ) Date:  October 9, 2008
Hammill, LLP, et al.,           ) Time:  8:30 a.m.
18 |                                 ) Place: Dept. "2J"
)
19 | _____) Assigned to the Honorable Randall
White
20 |

21 |     This cause came on regularly for hearing in the above-

22 | entitled action on October 9, 2008 in Dept. 2J (Indio Branch) of

23 | the above-entitled court.

24 |     A.  A default had previously been entered against defendants

25 | David Ross and Ross, Rose & Hammill, LLP by virtue of an order

26 | imposing terminating sanctions, which order was entered by this

27 | court on January 12, 2007.

28 |     B.  On February 22, 2007, this court ordered, adjudged and

015

1  decreed that each of the allegations of the Plaintiffs' Second

2  Amended Complaint in the above-entitled action is deemed to be

3  true, and defendants David Ross and Ross, Rose & Hammill, LLP,

4  and each of them, are deemed to have admitted each of them;

5      C.  On February 22, 2007, this court ordered, adjudged and

6  decreed that Defendants David Ross and Ross, Rose & Hammill, LLP,

7  and each of them, shall pay to Plaintiffs, Jason Rubin and Cira

8  Ross, as Co-Trustees of the Cira Ross Qualified Domestic Trust,

9  the sum of $1,439,178.00 (One Million Four Hundred Thirty-Nine

10  Thousand One Hundred Seventy-Eight Dollars);

11      D.  On July 18, 2007, this court ordered, adjudged and

12  decreed, pursuant to an Amended Judgment Against Both Defendants

13  entered on said date, that, in addition to the $1,439,178.00 sum

14  specified in the preceding paragraph, defendants David Ross and

15  Ross, Rose & Hammill, LLP, and each of them, shall pay to

16  Plaintiffs Jason Rubin and Cira Ross, as Co-Trustees of the Cira

17  Ross Qualified Domestic Trust, as said Plaintiffs' costs of suit

18  (including, but not limited to, attorney's fees), the sum of

19  $304,957.04 (Three Hundred Four Thousand Nine Hundred Fifty-Seven

20  Dollars and Four Cents);

21      E.  Defendant Ross, Rose & Hammill, LLP failed to appear for

22  a duly noticed judgment debtor examination on June 5, 2007

23  without good cause.  Accordingly, on June 5, 2007, pursuant to

24  Code of Civil Procedure Section 708.170(a)(2), this court

25  ordered, adjudged and decreed that the principal amount of the

26  instant judgment was increased, with respect to defendant Ross,

27  Rose & Hammill, LLP (but not with respect to defendant David

28  Ross), by the sum of $2,400.00 (Two Thousand Four Hundred Dollars

016

1 │ and No Cents).

2 │     F.   On March 11, 2008, pursuant to the Court of Appeal's

3 │ denial of defendants' second appeal (E040545) regarding monetary

4 │ and evidentiary discovery sanctions, the court awarded costs

5 │ (including, but not limited to, attorney's fees) to Plaintiffs in

6 │ the sum of $16,073.27 and augmented the Amended Judgment to

7 │ include said sum (the resulting judgment will be referred to

8 │ herein as the "Augmented Amended Judgment").  The Augmented

9 │ Amended Judgment amounts to $1,760,208.31 with respect to

10 │ defendant David Ross and amounts to $1,746,535.04 with respect to

11 │ defendant Ross, Rose & Hammill, LLP, excluding accrued interest

12 │ at the legal rate.

13 │     G.   On October 9, 2008, pursuant to the Court of Appeal's

14 │ denial of defendants' third appeal (E043086), the court awarded

15 │ attorney's fees to Plaintiffs in the sum of $39,780.00

16 │ and ruled that the Augmented Revised Judgment shall be augmented,

17 │ with respect to defendant David Ross, to include said sum and the

18 │ costs claimed by Plaintiffs pursuant to a Memorandum of Costs

19 │ filed on August 7, 2008 (in the sum of $2,565.22).

20 │ **IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that:

21 │     1.   In addition to the $1,439,178.00 sum specified above in

22 │ Paragraph C, in addition to the $304,957.04 sum specified above

23 │ in Paragraph D, and in addition to the $16,073.27 sum specified

24 │ above in Paragraph F, defendant David Ross shall pay to

25 │ Plaintiffs Jason Rubin and Cira Ross, as Co-Trustees of the Cira

26 │ Ross Qualified Domestic Trust, as said Plaintiffs' costs

27 │ (including, but not limited to, attorney's fees) with respect to

28 │ the appeal defendants initiated in the Fourth Appellate District,

**017**

1  Division Two (No. E043086), the sum of $42,345.22 (Forty-Two

2  Thousand Three Hundred Forty-Five Dollars and Twenty-Two Cents).

3

4  Dated: October 9, 2008

                              The Honorable Randall White
5                             Judge of the Superior Court

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

018

**Exhibit B**

## SETTLEMENT AGREEMENT
## AND MUTUAL RELEASE OF ALL CLAIMS

THIS SETTLEMENT AGREEMENT AND MUTUAL RELEASE OF ALL CLAIMS ("Agreement") is dated as of April 9, 2002, for reference purposes, and is made and entered into by and between the following:

SYLVIA MANDEL, as Executor of the Estate of Ysaac Ross, Deceased ("Executor");

CIRA TAPIA ROSS, the Surviving Spouse of Ysaac Ross ("Cira"); and

ANNA YOUNG, BEA SILPA, MORRIS GLICKMAN, IDA RUBIN, LINDA PARMENTIER, GLORIA KARP, DAVID L. ROSS, SUSAN PARKER, ESTHER RICHMOND, and SYLVIA MANDEL (individually as "Beneficiary" and collectively, the "Beneficiaries").

### RECITALS:

A.    YSAAC ROSS died on January 11, 2001, a resident of Riverside County, California ("Decedent"). The Decedent's Will, dated July 27, 1987, and first Codicil thereto, dated April 16, 1992, was filed with a Petition for Probate and for Special Letters of Administration, whereby Sylvia Mandel and Jason Rubin were appointed Special Co-Administrators of the Decedent's estate. Sylvia Mandel, named in the Decedent's Will to act as Executor, was appointed Executor of the Decedent's estate on January 18, 2002.

B.    Cira and the Decedent were married on July 31, 1950, in Orange County, California, fifty years prior to the Decedent's death. The Decedent was survived by Cira, as his Surviving Spouse, and the Beneficiaries, some of who are named as specific devisees in the Decedent's Will and are intestate heirs of the Decedent. The Decedent was not survived by issue.

C.    The Decedent made certain allegations in his Will that his estate consisted of separate property and although he declared himself to be single, he made certain provisions for Cira in the form of specific bequests. The Decedent's Will did not dispose of the Decedent's entire estate.

D.    On or about September 4, 2001, Cira filed a Spousal Property Petition whereby she sought a judicial determination that the Decedent's estate consisted entirely of community property and that therefore she was entitled to one-half of the estate as her community property, and that she was entitled to that portion of the Decedent's community property that was not disposed of by his Will. Some of the Beneficiaries objected to various matters filed in the probate proceeding, including Cira's Spousal Property Petition.

E.    A mandatory settlement conference was held on January 18, 2002, and the

020

parties hereto reached a settlement which was placed on the record. The purpose of this Agreement is to memorialize that settlement in accordance with the terms thereof.

NOW, THEREFORE, the parties hereto agree as follows:

1.   **Estate Consists of Community Property.**   The parties hereto acknowledge that all property owned by the Decedent and Cira, whether in their individual names or in their joint names, constitutes their community property. The Beneficiaries withdrew their objections to Cira's Spousal Property Petition which proceeded to trial on February 11, 2002. Upon judicial determination that all property was community property, one-half of the community property estate was set aside to Cira or her assignee, and the Decedent's one-half interest was to be held by the Executor and distributed pursuant to court order in that proceeding, as further set forth in Paragraph 2 of this Agreement.

2.   **Distribution of Probate Estate.**   The Executor filed a Petition for Determination of Entitlement to Estate Distribution (Probate Code Section 11700) ("Petition") in the estate proceeding. The Petition requested distribution of the Decedent's estate as follows:

(a)   The specific bequest of $25,000.00 cash to Cira as set forth in Article FIFTH of the Decedent's Will, is to be distributed to Cira, but no additional amounts are to be paid to Cira under Articles THIRD and SIXTH of the Will.

(b)   The specific pecuniary bequests set forth in Article SIXTH shall be paid, except that the Decedent's sister, Dora Ross Glickman, predeceased the Decedent, so the $50,000.00 bequest to her instead shall be distributed pursuant to the provisions of Probate Code Section 21110(a).

(c)   The Decedent's one-half interest in the real property located at 2454-2460 West Pico Boulevard shall be distributed to Ida Rubin, together with $2,000.00 per month until the earlier of the date of distribution or the sale of the property pursuant to the provisions of Article SEVENTH of the Decedent's Will.

(d)   The Decedent's one-half interest in the real property located at 2101-2117 West Pico Boulevard (1243-1247 Alvarado Boulevard) shall be distributed to Sylvia Mandel pursuant to the provisions of Article EIGHTH, Subparagraph (g) of the Will, as amended by Paragraph 2 of the Decedent's Codicil.

(e)   The balance of the Decedent's estate shall be distributed to Cira, or her assignee, as Decedent's community property under the intestate provisions of Probate Code Section 6401(a).

The Executor's Petition was approved on April 9, 2002.

3.   **Gift by Cira.**   Cira acknowledges that although the estate constitutes community property, it is her desire that the Beneficiaries, being some of Decedent's surviving

2

021

family members, receive a portion of the community property estate in addition to the specific bequests provided in the Decedent's Will. Accordingly, Cira will make a gift of $1,000,000.00 to each of the Beneficiaries within three (3) business days after Cira and that Beneficiary have executed this Agreement. The date of the gift shall be the date the funds comprising the gift clear with the Escrow Holder, hereinafter set forth ("date of gift"). Cira shall make the gift funds received by her as her community property and not from funds distributable to her from the Decedent's probate estate.

The parties hereto acknowledge that the gift made by Cira is a bona fide gift without consideration.

4. **2002 Gift Tax Returns.** Cira, as the donor, shall be responsible for and shall pay all gift taxes on the gifts made to the Beneficiaries. Cira shall be responsible for filing all required federal gift tax returns for the 2002 calendar year, due on or before April 15, 2003.

5. **Decedent's Federal Estate Tax Return.** The Executor has filed the federal estate tax return for the Decedent's estate reflecting the tax liability based on the judicial determination that the Decedent's entire estate is community property and that the portion of the estate distributable to Cira will qualify for the marital deduction (subject to adjustment for distributions pursuant to the family allowance). The Executor has requested an early discharge from personal liability under Section 2204 of the Internal Revenue Code.

6. **Beneficiary's Deposit.** The gift by Cira provided for in Section 3 of this Agreement shall be made payable to each Beneficiary and Union Bank, 9460 Wilshire Boulevard, Beverly Hills, California ("Escrow Holder") and deposited by the Beneficiary in a separate irrevocable escrow account at Escrow Holder (See Attachment 'A' for each account) and shall be distributed pursuant to the following terms and conditions:

(a) Concurrently upon deposit of the gift by each Beneficiary and confirmation of available funds, the following amounts shall be paid by the Beneficiary and Escrow Holder to the law firm of Ross, Rose & Hammill ("Law Firm"), less any previous sums paid by the Beneficiary to that law firm for matters pertaining to the estate of Ysaac Ross, deceased:

| | |
|---|---|
| Ida Rubin | $ 15,000.00 |
| Esther Richmond | 15,000.00 |
| Sylvia Mandel | 15,000.00 |
| Bea Silpa | 30,000.00 |
| Gloria Karp | 30,000.00 |
| Morris Glickman | 30,000.00 |
| Susan Parker | 30,000.00 |
| Linda Parmentier | 30,000.00 |
| Anna Young | 30,000.00 |
| TOTAL | $225,000.00 |

3

022

The foregoing sums shall constitute attorneys' fees paid by each of the above named Beneficiaries to the Law Firm for services rendered in this proceeding. Escrow Holder may rely solely on the written statement of the Law Firm as to the previous sums paid by that Beneficiary for services rendered in this proceeding, and neither Cira or Escrow Holder shall otherwise be concerned.

(b)    Each Beneficiary and Escrow Holder shall then make a gift in the sum of $10,000.00 to the Decedent's grandniece, Sara Richmond.

(c)    Each Beneficiary and Escrow Holder shall then disburse to the Beneficiary the sum of $300,000.00, less the amounts distributed by each Beneficiary as provided in Subparagraphs (a) and (b) above.

(d)    The balance of each Beneficiary's $700,000.00 shall be held by the Beneficiary and Escrow Holder in accordance with the terms set forth in Paragraph 7.

7.    **Holdback.**  The balance of the Beneficiary's gift shall be held, managed and distributed as follows:

(i)    The Beneficiary shall provide his or her social security number and shall be responsible for reporting all income generated on said account for income tax purposes. The Beneficiary shall be entitled to invest the funds in Escrow Holder's money market or savings account, U.S. Treasury obligations or corporate bonds (Moody AAA) and shall receive 45% of the net income generated by the Beneficiary's account on an annual basis, distributable quarterly or in other convenient installments.

(ii)    In the event of Cira's death within three years of the date of the gift thereby causing the gift tax paid by her on the $1,000,000.00 gift provided for in Section 3 to be included in her estate for estate tax purposes, the Beneficiary and Escrow Holder shall, subject to the claim procedure set forth in Paragraph 8, distribute to Cira's personal representative or trustee an amount equal to the increase in her estate taxes resulting from such inclusion but no more than $250,000.00. Each Beneficiary's holdback shall be subject to a claim based on the gift tax inclusion for his or her gift only. On the earlier of (1) three years after the date of the gift, or (2) the death of Cira within the period that ends three years after the date of the gift, the Beneficiary shall be entitled to withdraw any remaining portion of the $250,000.00, plus accrued but undistributed income generated thereon, from the escrow account established for that Beneficiary.

(iii)    In the event any additional estate taxes are assessed on the assets in the Decedent's estate as a result of the recharacterization of the Decedent's estate as separate property such that the gift from Cira shall be deemed a bequest received by the Beneficiary from the Decedent and thus not qualified for the marital deduction in his estate, the Beneficiary and Escrow Holder shall, subject to the claim procedure set forth in Paragraph 8,

4

023

distribute to Cira, or her personal representative or trustee, an amount equal to the increase in Decedent's estate taxes attributable to Cira's gift to the Beneficiary resulting from such recharacterization, but no more than $450,000.00. Each Beneficiary's holdback shall be subject to a claim for estate taxes based on his or her gift only. Three years following the filing of the federal estate tax return for the Decedent (including the Executor's request for early audit under IRC 2204), or earlier should the return be audited and accepted by the Internal Revenue Service, or alternatively, accepted in writing by the Internal Revenue Service without an audit as filed, thus releasing the Executor from liability therefor, the Beneficiary shall be entitled to withdraw any remaining portion of the $450,000.00, plus accrued but undistributed income generated thereon from the escrow account established for that Beneficiary.

8. **Claim Procedure.** In the event that Cira or Cira's personal representative or Trustee believes that she is entitled to reimbursement as provided above, notice shall be given to each Beneficiary and Escrow Holder for which a claim is or may be sought under Paragraph 7. Such notice shall be given within thirty (30) days after Cira, her personal representative or trustee, obtains knowledge of such claim. In the event that the Beneficiary disputes the amount of the claim by Cira, her personal representative or trustee, then either Cira, her personal representative or trustee or the Beneficiary shall, within 30 days thereafter, file a motion seeking judicial determination and resolution as provided in Paragraph 9. Upon receipt of a written claim by Cira, Escrow Holder shall not distribute that portion of the holdback subject to the claim without a written mutual agreement of Cira, her personal representative or trustee, and the Beneficiary, or upon receipt of a court order authorizing Escrow Holder to do so as provided in Paragraph 9. In any third party audit or proceeding, administrative or otherwise, and during negotiation or arbitration, if any, each Beneficiary shall have the right to participate, individually or through legal counsel of the Beneficiary's choice, and to otherwise participate in the defense of the claim at the Beneficiary's expense. In any claim dispute, Escrow Holder need not be involved and the parties to this Settlement Agreement agree to release and hold harmless Escrow Holder from any cost, liability or expense associated therewith.

9. **Court Jurisdiction.** All parties acknowledge that this is a court supervised settlement and that the Riverside County Superior Court will retain jurisdiction under CCP 664.6. The provisions of this Agreement may be enforceable by motion and subsequent judgment in any proceeding brought for that purpose.

10. **Designation of Survivor.** Each Beneficiary may designate a recipient of the balance of the account should the Beneficiary die during the holdback period. Further, each Beneficiary may designate his or her revocable trust, in which the Beneficiary is a trustor and trustee, as the designated beneficiary of that account. Notwithstanding such designation, any successor to that account shall be subject to holdback and indemnification provisions for the time periods provided herein and subject to all the conditions of this Settlement Agreement.

11. **No Admission of Liability.** This Agreement is a mutual compromise and is not intended to be nor shall be construed as an admission of liability by any party hereto or any of their respective agents, employees or representatives, nor shall it be construed as an admission

5

024

that any claim or cause of action is without merit. The parties hereto hereby explicitly deny any legal liability of any kind arising out of this matter and enter into this Agreement only as the most efficient way to economically terminate all disputes arising therefrom and relating thereto.

      12.   **Mutual Release.** Except for the executory provisions of this Agreement, each party, the Executor, Cira and the Beneficiaries, on behalf of themselves and each of their respective successors and assigns, does hereby fully and forever mutually release and discharge the other parties hereto and each of the predecessors, successors and assigns of the other party and respective stockholders, partners, members, directors, officers, attorneys, accountants, consultants, representatives, employees, agents, heirs, successors and assigns of the other party, of and from any and all liabilities, claims, demands, contracts, debts, obligations and causes of action, in law, equity, or otherwise, that any party, individually and jointly, has held, now holds, or may hold in the future, whether known or unknown, concealed or hidden, suspected or unsuspected, which was created or arose out of the subject matter of this Agreement. This release shall specifically include, but shall not be limited to, any claims or causes of action, past, present or future, as well as claim based on elder abuse against Cira and any pending temporary restraining orders or preliminary injunctions now existing.

      13.   **General Release.** Each party hereto intends this Agreement, once duly executed, shall be effective as a complete and final bar to each and every liability, claim, demand, contract, debt, obligation and cause of action, in law, equity or otherwise, that he or she has or might have against any other party released herein, as provided by California Civil Code Section 1541. Each party hereby explicitly relinquishes and waives all rights and benefits conferred by the provisions of Section 1542 of the California Civil Code, which reads as follows:

      A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

      Each party hereto represents that the party has read and understands the foregoing provisions of California Civil Code Section 1542, and in so waiving such provision, the parties hereby acknowledge that they may hereafter discover facts in addition to or different from those which they now believe to be true with respect to the matters herein released, but agree that they have taken that possibility into account in determining the amount of consideration to be given under this Agreement, and that the general releases herein given shall be and remain in effect as full and complete general releases notwithstanding the discovery or existence of any such additional or different facts, of which the parties expressly assume the risk.

      14.   **Non-Assignment of Claims.** Each party hereto represents and warrants that it has not heretofore assigned any rights, claims, causes of action, or defenses released herein and that no other person, firm, corporation, estate, or other entity has had or now has any interest in any of the rights, claims, causes of action, or defenses released herein. Each party agrees to indemnify and hold harmless each other party from any loss, expense, damage, liability, claim, or

demand, including reasonable attorneys' fees and costs, by reason of any actual or purported assignment or transfer of any matter released herein.

      15.    **Consultation with Legal Counsel.** Each party to this Agreement represents that it has been advised to or has consulted with independent legal counsel and secured independent advice and consultation concerning every aspect of this Agreement and the rights and liabilities he is hereby relinquishing.

      16.    **Attorneys' and Accountants' Fees and Costs.** Each party hereto agrees to bear its own legal and accounting fees and costs relating to this Agreement, and each hereby waives any and all claims it may have against the other, individually or severally, for attorneys' and accountants' fees or costs, except that in the event an action or proceeding is brought to enforce the terms of this Agreement the prevailing party shall be entitled to recover reasonable attorneys', accountants' and/or professional consultants' fees and costs.

      17.    **Notices.** All notices, demands, approvals and other communications required to be in writing under this Agreement shall be delivered to the appropriate party at its address set forth following his or her signature to this Agreement. Addresses for notice may be changed from time to time by written notice to all other relevant parties. All notices or other communications required or permitted hereunder shall be in writing, and shall be personally delivered or sent by certified mail, postage prepaid, return receipt requested, telegraphed, hand-delivered or sent by facsimile transmission (with confirmation copy by U.S. mail) and shall be deemed received upon the earlier of (i) if personally delivered, the date of delivery to the address of the person to receive such notice, (ii) if mailed, the date shown as the date of delivery on the return slip verifying delivery, or (iii) if faxed, the date of the confirmed facsimile transmission.

      18.    **Entire Agreement.** This Agreement contains the entire agreement of the parties, and any other promise or inducement, representation, oral or written, not set forth in this Agreement shall have no force and effect.

      19.    **Amendments.** Any amendment or modification of this Agreement shall be valid only if in writing and signed by the parties to be bound.

      20.    **Successors and Assigns.** This Agreement shall be binding upon and inure to the benefit of the heirs, executors, administrators, successors, assigns and representatives of each party.

      21.    **Governing Law.** This Agreement shall be governed by and construed under the laws of the State of California applicable to contracts made in such state, without reference to conflicts of law principles.

      22.    **Further Cooperation.** The parties hereto agree to execute and deliver such further documents or instruments and take such further actions as the parties shall reasonably request to effectuate the intent of the parties as expressed herein.

026

23.  **Counterpart and Facsimile/Photocopy Signatures.**  This Agreement may be signed in any number of counterparts, each of which shall be deemed an original and all of which shall be deemed one and the same instrument.  A facsimile or photocopy shall be deemed to have the same force and effect as an original.

24.  **Deemed to be Prepared by All Parties**.  In interpreting this Agreement it shall be deemed that it was prepared by all of the parties jointly and no ambiguity shall be resolved against any party on the premise that it or its attorneys was responsible for having drafted this Agreement or the provision at issue.

25.  **Full Authority**.  Each signatory to this Agreement represents and warrants that he or she has the full authority and power to bind the party for whom he or she is executing this Agreement.

**IN WITNESS WHEREOF**, the parties have duly executed this Agreement as of the date first set forth above.

**Executor**:

_____
SYLVIA MANDEL

Address: c/o Walter, Finestone & Richter
         11601 Wilshire Blvd., Suite 1900
         Los Angeles, CA 90025

**Cira**:

_____
CIRA TAPIA ROSS

Address: 616 High Road
         Palm Springs, CA 92262

**Beneficiaries**:

_____
ANNA YOUNG

Address: 16456 Westfall Place
         Encino, CA 91436

_____
BEA SILPA

Address: 16611 Adlon Road
         Encino, CA 91436

8

**Beneficiaries**:

_[signature]_

MORRIS GLICKMAN

Address: 15422 Milldale Drive
Los Angeles, CA 90077-1601

_[signature]_

IDA RUBIN

Address: 5727 Etiwanda Drive, Unit 1
Tarzana, CA 91356

_[signature]_

LINDA PARMENTIER

Address: 1766 Nuevo Road
Henderson, NV 98014

_[signature]_

GLORIA KARP

Address: 23425 Park Hermosa
Calabasas, CA 91302

_[signature]_

DAVID L. ROSS

Address: 715 N. Hillcrest Road
Beverly Hills, CA 90210

_[signature]_

SUSAN PARKER

Address: 6003 County Oak Road
Woodland Hills, CA 91367-1085

_[signature]_

ESTHER RICHMOND

Address: 2804 Medill Place
Los Angeles, CA 90064

_[signature]_

SYLVIA MANDEL

Address: 3839 Royal Woods Drive
Sherman Oaks, CA 91403

9

**Exhibit C**

## IRREVOCABLE ASSIGNMENT

For value received, I, CIRA ROSS, currently residing at 616 High Road, Palm Springs, California 92262, do irrevocably transfer and assign to CIRA ROSS, JASON RUBIN and MERRILL LYNCH COMPANY, FSB, a federally chartered savings bank, as Trustees of the Cira Ross Qualified Domestic Trust dated March 11, 2002 (the "QDOT") those assets passing to me from the estate of my deceased husband, YSAAC ROSS, on January 11, 2001, the date of his death, which are described on Exhibit 1 of this Assignment.

SYLVIA MANDEL is serving as the Administrator of the Estate of Ysaac Ross in the County of Riverside, State of California under the jurisdiction of the Riverside County Superior Court. Said Administrator agrees to transfer the assets, or the net proceeds of sale therefrom after paying any and all expenses of administration and claims, to the QDOT, and to file the United States Federal Estate Tax Return for the Estate of Ysaac Ross reflecting this Irrevocable Assignment of said assets to the QDOT.

The Trustees of the QDOT agrees to accept said assets into the QDOT upon receipt from the Administrator.

DATE: ___3 - 11 - __2002___          _Cira Ross_____
                                     Cira Ross

DATE: _3 -11 - __2002___             _Sylvia Mandel_____
                                     Sylvia Mandel, Executor of the
                                     Ysaac Ross Estate

DATE: _3/11/2002_____               _____
                                     Jason Rubin, co-Trustee of the QDOT

DATE: _4/3 ___2002___                Merrill Lynch Trust Company, FSB

                                     by_____
                                        Co-Trustee of the QDOT

030

**Exhibit D**







# FAST STEP SMALL BUSINESS BANKING AGREEMENT AND DISCLOSURE STATEMENT

**BY SIGNING THE FAST STEP BUSINESS CREDIT APPLICATION OR BY USING ANY OF THE CREDIT FACILITIES DESCRIBED HEREIN, YOU AGREE TO THE TERMS AND CONDITIONS OF THIS AGREEMENT AND DISCLOSURE STATEMENT.**

1. **Promise to Pay.** At the times indicated below, you promise to pay to Bank of California, N.A. ("Bank"), or order, the full amount of all credit outstanding (including any amounts disbursed prior to execution of this Agreement) under the "Credit," plus any interest and other charges due under the Agreement, and any and all accrued interest, recording or registration fees, taxes or other assessments required, costs, fees, and expenses, including security interest relating to any property given as collateral hereunder. You also promise to pay all collection costs, including court costs and attorneys fees, including but not limited to those incurred in arbitration, trial court, and on any appeal or in any bankruptcy court, and the costs to Bank of any appraisal and for any other costs that the Bank may incur in enforcing this Agreement.

2. **PROVISIONS CONCERNING YOUR TERM LOAN**

   **Interest Rate.** The interest rate for your Term Loan shall be set forth in the Welcome Letter, calculated on the basis of a 365 day year. You agree that this interest rate is conditioned upon payment being made by automatic deduction from your Union Bank of California checking or savings account ("Account").

3. ...

4. **Statements.** The Bank will mail, to your most recent address shown on its records, a year end statement which lists the balance, rate and interest paid for the calendar year. If you have any dispute concerning the statement, you must notify the Bank in writing at the address shown on your monthly statement within 15 days of the statement mailing date, after which time the statement will be considered correct.

**PROVISIONS CONCERNING YOUR CREDIT LINE**

5. **Credit Line.** The amount of your Line is established by the Bank and shown on your monthly statements. The Bank may reduce the amount of credit available on your Line is reduced by the amount of credit available on your Line is reduced by the amount of the principal balance and accrued but unpaid interest at the date the Line is opened. The entire unpaid amount of your Line, plus any unpaid interest and other charges, will be due and payable one year from the opening date of your Line. The Bank may, at its sole option, extend your Line for a period of time determined by the Bank after which your Line will be due and payable in full. If your Line is not renewed and credit information should the Bank request such information for the renewal of your Line, in no event is the Bank required to renew your Line, however.

6. **Line Access.**

   **Check Access.** After your Line is opened, the Bank will provide you with Lines of Credit Checks ("Checks"). You promise that you will not permit any person not authorized to sign on your Line to use your Checks. Checks are not returned to you; however, you may obtain copies of Checks subject to payment of a service charge as permitted by applicable law. You may place a stop payment on a check issued by you under the Line in accordance with the terms and "All About Business Accounts & Services" booklet. The Bank has no responsibility for the failure of any Checks, and if a stop payment is in effect. The Bank shall not be liable to any party to accept checks drawn by you. If your checks become lost or stolen, you agree to notify the Bank at once at the address or telephone number shown on your monthly billing statement. Only one signature shall be required on any check.

   **Telephone or PC Access.** You may sign up to permit advances from your Line to your Account using the telephone or through software in a personal computer. The Bank will issue a Personal Identification Number (PIN) and then transactions will be governed by the terms of this Agreement, and/or Telephone Service Agreement. You agree to indemnify, defend and hold harmless the Bank from and against all liability, loss and costs in connection with any act resulting from telephone instructions which Bank reasonably believes are made by you or which are authorized by you to give such instructions. This indemnity shall survive termination of this Agreement.

7. **Statements.** The Bank will mail, to your most recent address shown on its records, a statement for each monthly billing period in which you have a balance. You need not pay any amount concerning the statement, you must notify the Bank in writing at the address shown on your monthly statement within 15 days of the statement mailing date, after which time the statement will be considered correct.

8. **Interest Rate, Daily Periodic Interest Rate.** The interest rate for your Line is the prime rate in effect on the first day of your billing period, plus a spread as disclosed on your statement ("Spread"). If more than one prime rate is published, the rate is the highest of these rates. West Coast Edition, the Bank may use the prime rate published in any other newspaper of general circulation, or may substitute a similar reference rate if the prime rate is not published in The Wall Street Journal (West Coast Edition) or on publish a prime rate, the Bank may use the prime rate published in any other newspaper of general circulation, or may substitute a similar reference rate if The Wall Street Journal ceases to publish, or ceases to publish a prime rate. You agree that the interest rate is conditioned upon payments being made by monthly automatic deduction from your Account. All advances and/or debits to your Line, except daily periodic interest charges or late payment service charges, will be subject to a daily periodic interest rate for each day is being made by monthly automatic deduction from your Account. The daily periodic interest rate is computed by multiplying the outstanding balance of your Line each day of the billing period by the daily periodic interest rate described above. The outstanding balance for each day is determined by deducting from the beginning balance for that day all payments and credits, exclusive of periodic interest charges and other debits, exclusive of periodic interest charges, as applicable prior billing. Your monthly periodic interest charges are the sum of all daily periodic interest charges assessed during the monthly billing period.

9. **Payment.** You agree to pay your balance in the manner herein described. If there are any outstanding balances under the Credit, you agree to pay at least the minimum monthly payment. Your minimum monthly payment is the sum of (i), (ii) and (iii) where (i) is the amount of interest charged for the billing period, plus (ii) any amount past due, plus (iii) any fees, late charges and/or one-of-pocket expenses assessed hereunder. If the sum of (i), (ii) and (iii) is less than $100 (the "Shortfall"), the minimum payment shall be $100, and the difference between $100 and the Shortfall will be applied against principal outstanding. If your Line is not renewed as of the last day of the term of your Line, the entire unpaid balance of your Line, including unpaid fees and charges, will be due and deducted from your Account. You may make

**OTHER PROVISIONS**

10. **Cancellation and Suspension.** The Bank may cancel your Line by giving you written notice at the address shown on your statement. If you cancel your Line, or if your Line is canceled, the entire balance, including accrued and unpaid interest, and all amounts for Checks not yet become immediately due and payable upon the date of cancellation. Checks written on your Line not received by the Bank after your Line is canceled will not be paid.

11. **Automatic Deduction.** You agree that each monthly payment shall be deducted automatically from your Account. Alternatively, if there are insufficient funds in your Account, one-of-pocket expenses may be charged to your Account. You agree to pay the sum pursuant to the terms of this Agreement shall be made by an insufficient funds in the Account to pay the full amount, the Bank may terminate your automatic deduction percentage points. The Bank may also charge a deducting any amounts due in the same legal ownership any may owing.

12. **Fees.** You agree for a loan fee and other expenses incurred by the Bank disclosed to you separately. Certain out-of-pocket charges will be assessed to activate your Credit, and periodic charges may also be assessed to activate your Credit, are subject to the periodic interest rate described above, may be deducted from the periodic interest charged to the principal advance under the Credit. All fees are chargeable to the Credit, in the event of cancellation or termination of this Credit for any reason.

13. **Late Payment.** If your Credit we establish in California or Washington, if the Bank receives a payment more than 10 days after the due date shown on your statement, you agree to pay a fee of 5% of the due, or $10.00, whichever is greater. If your Credit is established in Oregon, if the Bank receives a payment more than 15 days after the due date shown on your renewal fee as disclosed by the Bank at that time.

entity other than yourself providing financial support for the
Credit (collectively, "Obligor"); (b) if any insolvency of any
Obligor; or during any such insolvency of any Obligor or any such
Obligor's debts as such debts become due; (c) the
commencement as to any Obligor of any voluntary or
involuntary proceeding under any laws relating to
bankruptcy, insolvency, reorganization, arrangement, debt
adjustment or debtor relief; (d) the assignment by any
Obligor for the benefit of such Obligor's creditors; (e) the
appointment, or commencement of any proceedings for the
appointment, of a receiver, trustee, custodian or similar
official for all or substantially all of any Obligor's property;
(f) the commencement of any proceeding for the dissolution
or liquidation of any Obligor; (i) the termination of
existence or the death of any individual Obligor; (j) the revocation of
any guaranty given in connection with this Agreement; (k)
the failure of any Obligor to comply with any order,
judgment, injunction, decree, writ or demand of any court;
(l) the filing or issuance against any Obligor or the property of any Obligor, of any notice of
levy, notice to withhold, or other legal process for taxes;
(m) the default by any Obligor personally liable for amounts
owed hereunder on any obligation concerning the borrowing
of money from any person; or (n) the termination of any
advance funds hereunder and may declare all obligations
under this Agreement immediately due and payable;
however, upon the occurrence of an event of default under
(e), (f), (g) or (h), all principal, interest, and other fees and
charges shall automatically become immediately due and
payable. In the event of the occurrence of an event of
default, you agree that the Bank may, at its option, compute
interest rate for your Credit as a per annum rate equal to
the rate set forth above, calculated from the date of default until all amounts
hereunder are paid in full.

**17. Copies of Documents.** The Bank will charge a service
charge of $20.00, plus $20.00 per hour, for research and
other information concerning your Credit record and
reporting agencies, credit reporting, guarantees of the
Credit, or pursuant to or as order from a governmental agency
or court. You agree that the Bank may furnish a copy of any

**18. Credit Information.** You hereby authorize the Bank to
release information concerning your Credit record and
performance to other creditors, credit bureaus, credit
reporting agencies, credit reporting, guarantees of the
Credit, or pursuant to or as order from a governmental agency
or court. You agree that the Bank may furnish a copy of any
copy.

---

be furnished at any time such information or material
regarding your financial condition. You agree that the Bank
may share the information from credit application or credit
file with other departments of the Bank, or with its parent,
subsidiaries or affiliated companies. You hereby further
authorize the Bank to obtain credit reports, copies of your
tax returns and other information from the Internal Revenue
Service, and from any other source that the Bank may deem
appropriate to verify (and from time to time re-verify) the information provided in connection with
this Credit.

**19. Assignment.** You agree that you may not assign the
Credit, or your rights or obligations, in any third party. The
obligations, under this Agreement, to any third party. The
Bank may assign the Credit or any of its rights hereunder
without your consent or notice to you.

**20. Telephone Monitoring.** The Bank's supervisory
personnel may listen to, to record telephone calls between
you, your employees and agents, and the Bank's employees
for the purpose of monitoring and improving the quality of
service you receive.

**21. Waiver.** You agree that the Bank may act, fail to act, or
delay any action to enforce its rights hereunder, and that no
such action, inaction, or delay shall constitute or be
interpreted as a waiver of its rights under this Agreement.

**22. Dispute Resolution.** This paragraph concerns the
resolution of any claim, cause of action, dispute or
controversy between you and the Bank and/or between any
Guarantor and the Bank (collectively, "Claim"), including
but not limited to any Claim which arises out of or is
related to: (a) this Agreement; (b) any document related to or in connection
with this Agreement, whether previously,
concurrently or hereafter (collectively, together with any
renewals, extensions, modifications, substitutions or
replacements of the "Subject Documents"); (c) the
negotiations, correspondence or communications relating to
any of the Subject Documents, whether or not incorporated
into the Subject Documents; (d) the administration or
management of the Subject Documents; (e) any alleged
agreements, promises, representations or transactions in
connection with the Subject Documents; (f) any violation of
the Subject Documents; or (g) any claim for damages
resulting from any business conducted between you and the
Bank, and related to the Subject Documents, including
claims for injury to persons, property or business interests.
At the request of you or the Bank, any such Claim will be
settled by judicial reference conducted pursuant to this
Agreement in accordance with the laws of the state in which

---

this Agreement is executed by you. You and the Bank shall
select a single referee or referee, who shall be a retired state or
federal court judge with at least five years of judicial
experience in civil matters. In the event that you and the
Bank cannot agree upon a referee, the referee shall be
appointed by the court. The referee shall determine all issues
relating to the applicability, interpretation, legality and
enforceability of this Agreement.

In the event that punitive claims are asserted, none of which
are found not subject to this dispute resolution paragraph,
you and the Bank agree to stay the proceedings of the claims
not subject to this paragraph until all other claims are
resolved in accordance with this paragraph.

In the event that punitive damages are permitted under
applicable state law, the amount thereof shall not exceed a
sum equal to three times the amount of actual damages as
determined by the referee.

The fees and expenses of the judicial reference shall be borne
equally by you and the Bank, unless the referee otherwise
provides in the statement of decision.

This dispute resolution paragraph does not limit the right of
you or the Bank to: (a) exercise self-help remedies such as
set-off; (b) foreclose against or sell any collateral by power
of sale or otherwise; or (c) obtain or oppose provisional or
ancillary remedies from a court of competent jurisdiction
before, during or after the pendency of the judicial
reference. The pursuit of or opposition to any such
remedy does not waive the right of you or the Bank to
judicial reference pursuant to this Agreement.

**23. WAIVER OF JURY TRIAL. In connection with any
arbitration or any other action or proceeding, you and the
Bank hereby expressly, intentionally and voluntarily waive
any right to trial by jury of any Claim.**

**24. Amendment.** This Agreement contains all the terms and
conditions of the Subject Documents. This Agreement may
matter hereof. The Bank may change the terms of this
Agreement by providing you with 30 days' advance notice of
such change. Otherwise, no amendment, alteration or
change in any term of this Agreement shall be effective
unless in writing signed by the party hereto and expressly
providing for the amendment hereof.

**25. Choice of Law.** The parties hereto agree that this
Agreement, and all other related documents, shall be
governed under, and interpreted in accordance with, the law
of the state in which the Credit was established. You
consent to the jurisdiction of any state or federal court, and
consent to the service of process by any means authorized
by the applicable law of California, Oregon, or Washington,
as the case may be.

---

**26. Severability.** In the event that any provision of this
Agreement is found to be illegal or unenforceable, the
remainder of this Agreement shall remain in full force and
effect.

**27. Use of Proceeds.** You agree that all Credit proceeds will
be used only for business purposes of the borrower by
signing this Agreement.

NOTICE TO OREGON RESIDENTS:
UNDER OREGON LAW, MOST AGREE
PROMISES AND COMMITMENTS MA
AFTER OCTOBER 3, 1989 CONCERNI
OTHER CREDIT EXTENSIONS WHICH
ARE FOR PERSONAL, FAMILY OR HOUSEHOLD
SECURED SOLELY BY THE BORROW
MUST BE IN WRITING, EXPRESS CON
AND BE SIGNED BY BANK TO BE ENF

NOTICE TO WASHINGTON RESIDENT
ORAL AGREEMENTS OR ORAL COMM
LOAN MONEY, EXTEND CREDIT OR T
FROM ENFORCING REPAYMENT OF A
NOT ENFORCEABLE UNDER WASHIN

035

BUSINESS

CASH RESERVE ACCOUN
AGREEMENT
AND DISCLOSURE
STATEMENT

| Attorney or Party Name, Address, Telephone & FAX Numbers, and California State Bar Number | FOR COURT USE ONLY |
|---|---|
| David A. Tilem (Bar No. 103825)<br>Law Offices of David A. Tilem<br>206 N. Jackson Street, Suite 201<br>Glendale, CA 91206<br>(818) 507-6000<br>(818) 507-6800<br><br>*Attorney for Plaintiff* Jason Rubin | |

### UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA

| In re:    David Leonard Ross | CHAPTER  7 |
|---|---|
| | CASE NUMBER  2:09-10720-SB |
| Debtor. | ADVERSARY NUMBER |
| Jason Rubin, as Co-Trustee of the Cira Ross Qualified Domestic Trust                                    Plaintiff(s),<br><br>vs.<br><br>David Leonard Ross                                    Defendant(s). | *(The Boxes and Blank Lines below are for the Court's Use Only) (Do Not Fill Them In)*<br><br>### SUMMONS AND NOTICE OF<br>### STATUS CONFERENCE |

**TO THE DEFENDANT:** A Complaint has been filed by the Plaintiff against you. if you wish to defend yourself, you must file with the Court a written pleading, in duplicate, in response to the Complaint. You must also send a copy of your written response to the party shown in the upper left-hand corner of this page. Unless you have filed in duplicate and served a responsive pleading by _____, the Court may enter a judgment by default against you for the relief demanded in the Complaint.

A Status Conference on the proceeding commenced by the Complaint has been set for:

| Hearing Date: | Time: | Courtroom: | Floor: |
|---|---|---|---|

☒  **255 East Temple Street, Los Angeles**      ❑  **411 West Fourth Street, Santa Ana**

❑  **21041 Burbank Boulevard, Woodland Hills**      ❑  **1415 State Street, Santa Barbara**

❑  **3420 Twelfth Street, Riverside**

PLEASE TAKE NOTICE that if the trial of the proceeding is anticipated to take less than two (2) hours, the parties may stipulate to conduct the trial of the case on the date specified, instead of holding a Status Conference. Such a stipulation must be lodged with the Court at least two (2) Court days before the date set forth above and is subject to Court approval. The Court may continue the trial to another date if necessary to accommodate the anticipated length of the trial.

Date of Issuance: _____

**JON D. CERETTO**
**Clerk of the Bankruptcy Court**


By: _____
        *Deputy Clerk*

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009 (COA-SA)*                                                                                     **F 7004-1**

Summons and Notice of Status Conference  - *Page 2*                **F 7004-1**

| In re<br>David Leonard Ross | (SHORT TITLE)<br>Debtor(s). | CASE NO.: 2:09-10720-SB |
| --- | --- | --- |

**NOTE**: When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on a CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

A true and correct copy of the foregoing document described as _____
_____ will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d), and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** - Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document.  On _____ I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email addressed indicated below:

☐ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL (indicate method for each person or entity served):**
On _____ I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follow.  Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL (indicate method for each person or entity served):** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method) by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_____     _____     _____
*Date*                          *Type Name*                                      *Signature*

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

FORM B104 (08/07)                                                                 2007 USBC, Central District of California

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Page 2) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br>Jason Rubin, as Co-Trustee of the Cira Ross  Qualified Domestic Trust | DEFENDANTS<br>David Leonard Ross |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>Law Offices of David A. Tilem<br>206 N. Jackson Street, Suite 201<br>Glendale, CA 91206 | ATTORNEYS (If Known)<br>Scott Clarkson<br>3424 Carson Street, Suite 350<br>Torrance, CA 90503 |

**PARTY (Check One Box Only)**
☐ Debtor          ☐ U.S. Trustee/Bankruptcy Admin
☒ Creditor        ☐ Other
☐ Trustee

**PARTY (Check One Box Only)**
☒ Debtor          ☐ U.S. Trustee/Bankruptcy Admin
☐ Creditor        ☐ Other
☐ Trustee

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
Denial of Discharge

## NATURE OF SUIT
(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - § 363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☒ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☒ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☒ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand  $ |

**Other Relief Sought**

FORM B104 (08/07), page 2                                                          2007 USBC, Central District of California

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | |
| --- | --- |
| **NAME OF DEBTOR**<br>David Leonard Ross | **BANKRUPTCY CASE NO.**<br>2:09-10720-SB |

| **DISTRICT IN WHICH CASE IS PENDING**<br>Central District | **DIVISIONAL OFFICE**<br>Los Angeles | **NAME OF JUDGE**<br>Bufford |
| --- | --- | --- |

| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| --- | --- | --- |
| **PLAINTIFF** | **DEFENDANT** | **ADVERSARY PROCEEDING NO.** |

| **DISTRICT IN WHICH ADVERSARY IS PENDING** | **DIVISIONAL OFFICE** | **NAME OF JUDGE** |
| --- | --- | --- |

| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | |
| --- | --- |
| **DATE**<br>8/31/09 | **PRINT NAME OF ATTORNEY (OR PLAINTIFF)**<br>David A. Tilem |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not presented by an attorney, the plaintiff must sign.