1   David A. Tilem (Bar No. 103825)
  LAW OFFICES OF DAVID A. TILEM
2   206 North Jackson Street, Suite 201
  Glendale, California 91206
3   Tel: 818-507-6000  Fax: 818-507-6800
  Email: DavidTilem@TilemLaw.com
4

5   Stephan A. Mills, (Bar No. 94166)
  ZEMANEK & MILLS
  11845 W. Olympic Blvd., Suite 625
6   Los Angeles, California 90064-5020
  Tel: 310-473-8100 Fax: 310-445-3166
7

8   Attorneys for Creditor Jason Rubin, as Co-Trustee
  of the Cira Ross Qualified Domestic Trust

9               **UNITED STATES BANKRUPTCY COURT**

10               **CENTRAL DISTRICT OF CALIFORNIA**

11                **LOS ANGELES DIVISION**

| | |
|---|---|
| 12  In re: | )  **Case No. 2:09-bk-10720-SB** |
| 13  **DAVID LEONARD ROSS,** | ) <br> )  **Chapter 7** |
| 14          Debtor. | ) <br> )  **Adv No.2:09-02063-SB** |
| 15  **JASON RUBIN, AS CO-TRUSTEE** <br>  **OF THE CIRA ROSS QUALIFIED** | )  **REQUEST FOR JUDICIAL NOTICE** <br> )  **RE: MOTION FOR ORDER DISMISSING** |
| 16  **DOMESTIC TRUST,** | )  **THE FIRST AMENDED COMPLAINT** |
| 17         Plaintiff, | ) <br> )  Date: January 26, 2010 |
| 18    v. | )  Time: 2:00 pm. <br> )  Ctrm: 1575 |
| 19  **DAVID LEONARD ROSS,** | ) <br> ) |
| 20         Defendant. | ) <br> ) |
| 21 | ) |

22  **TO THE HONORABLE SAMUEL L. BUFFORD AND ALL PARTIES IN INTEREST:**

23      Plaintiff Jason Rubin, as Co-Trustee of the Cira Ross

24  Qualified Domestic Trust hereby requests that the Court take

25  judicial notice of, and consider the following pleadings:

26     A.  Second Amended Complaint filed in the State Court in

27  Jason Rubin and Cira Ross, Co-Trustees of the Cira Ross

28  Qualified Domestic Trust v David Ross, et al, filed with the

1  California Superior Court, Riverside, bearing case number INC

2  031863 ("the State Court Action"), attached as Exhibit A.

3      B.  The Order Imposing Terminating Discovery Sanctions on

4  Defendants David Ross and Ross, Rose and Hammill, LLP in the

5  State Court Action, attached as Exhibit B.

6      C.  The Second Augmented Amended Judgment Against Both

7  Defendants in the State Court Action, attached as Exhibit C.

8      D.  The Declaration of David A. Tilem filed in response to

9  the Motion to Dismiss the original complaint filed in this

10  action and which is a part of this Court's file, attached as

11  Exhibit D.

12      E.  A copy of the Opinion of the California State Court of

13  Appeal, Fourth Appellate District, determining the issues on

14  David Ross' Anti-SLAPP motion, attached as Exhibit E.

15  DATED: January 12, 2010         LAW OFFICES OF DAVID A. TILEM

16

17                           By:

18                           Barry R. Wegman, attorney

19                           for Creditor Jason Rubin,

                         as Co-Trustee of the Cira

20                           Ross Qualified Domestic

                         Trust

21

22

23

24

25

26

27

28

03

**EXHIBIT A**

1  MITCHELL REED SUSSMAN #75107
2  1053 S. Palm Canyon Dr.
   Palm Springs, Ca. 92264
3  760 - 325 - 7191

4

   Attorney for Plaintiff
5

6

7

8              SUPERIOR COURT OF CALIFORNIA

9              COUNTY OF RIVERSIDE, INDIO BRANCH

10  JASON RUBIN and CIRA ROSS, in    )  No.  INC 031863
    their capacity as co - trustees  )
11  of the CIRA ROSS QUALIFIED       )
    DOMESTIC TRUST,                  )
12                                   )  SECOND AMENDED COMPLAINT FOR
                                     )  FRAUD, BREACH OF CONTRACT,
13              Plaintiff,           )  CONTRACTUAL INDEMNITY, IMPLIED
                                     )  INDEMNITY, DECLARATORY RELIEF,
14      vs.                          )  ABUSE OF PROCESS
                                     )
15                                   )
    DAVID ROSS, LINDA PARMENTIER,    )
16  MORRIS GLICKMAN, ANNA YOUNG,     )
    SUSAN PARKER, ROSS, ROSE &       )
17  HAMMILL, LLP,                    )
    DOES 1 - 10, inclusive;          )
18                                   )
19              Defendants.          )
                                     )
20  _____

21

22

23      Plaintiff alleges as follows:

24              PRELIMINARY ALLEGATIONS

25      1. Plaintiff,  JASON RUBIN and CIRA ROSS are co - trustees of

26  the  CIRA ROSS QUALIFIED DOMESTIC TRUST, an irrevocable qualified

27  domestic trust organized under section 2056A of the Internal

28  Revenue Code and the laws of the state of California.

                            -1-

                    SECOND AMENDED COMPLAINT

1   2. Plaintiff is informed and believes and thereon alleges the

2   defendant, ROSS, ROSE AND HAMMILL, LLP ( hereinafter "defendant's

3   law firm") is doing business in Los Angeles, California.

4       3.  Plaintiff is informed and believes and thereon alleges

5   that at all times mentioned herein defendants  Morrie Glickman,

6   Anna Young, Linda Parmentier and Susan Parker are residents of Los

7   Angeles, California.

8       4.  Plaintiff is informed and believes and thereon alleges

9   that at all times mentioned herein defendant David Ross is a

10  resident of Beverly Hills, California.

11      5. The plaintiff is informed and believes and thereon alleges

12  that the parties sued herein as Does 1 - 10, inclusive, are the

13  agents and/or employees of the other and are in some manner

14  responsible for acts herein alleged and the damages to plaintiff.

15  Plaintiff will amend this complaint to allege their true names and

16  capacities when ascertained.

17      6. Plaintiff is informed and believes and thereon alleges that

18  at all times herein mentioned each of the defendants was the agent,

19  servant and/or employee of the other and in doing the things herein

20  after alleged was acting within the scope and course of said agency

21  and with the consent, permission and knowledge of their co -

22  defendants.

23      7. At all times herein mentioned Ysaac Ross and Cira Tapia

24  Ross  ( hereinafter "Cira") were married in 1950 in Orange County,

25  California and a marriage license was issued by the County of

26  Orange on July 31, 1950.

27      8. At all times during the course of their 50-year marriage

28

-2-

SECOND AMENDED COMPLAINT

05

1 Ysaac Ross and plaintiff lived together in the state of California

2 as husband and wife and at the time Ysaac Ross passed away they

3 were still married.

4     9. In 1980 Ysaac Ross and Cira purchased a full time residence

5 at 616 High Road, Palm Springs, California, in which plaintiff

6 still resides.

7     10. On or about January 11, 2001, Ysaac Ross passed away

8 leaving an estate valued in excess of $40,000,000.00.

9     11. There is currently pending in this court a probate matter

10 entitled **Estate of Ysaac Ross IMP 017504** ( hereinafter "probate

11 case").

12     12. The probate estate of Ysaac Ross consists of stock, which

13 has been liquidated into money market deposits, bank deposits and

14 real estate valued between $40,000,000.00 and $45,000,000.00.

15     13. After the death of her late husband Cira was hounded and

16 harassed by certain relatives of her late husband, including

17 defendants Parker, Glickman, Young and David Ross who had been

18 trying to exert undue influence over her finances and her interest

19 in the probate case.

20     14. At all times during the course of the probate case the

21 defendant law firm Rose, Rose & Hammill, LLP was the attorney of

22 record for defendants Glickman, Young, Parker and Parmentier.

23     15. At all times during the course of the probate case

24 defendant David Ross was a partner in defendants' law firm.

25     16. At all times during the course of the probate case Cira

26 has been represented by attorney, Mitchell Sussman.

27     17. At all times mentioned the parties to the probate case

28

06

**SECOND AMENDED COMPLAINT**

1  were aware that Cira is represented by counsel and during the
2  course of the probate case Cira repeatedly requested that any of
3  her late husband's relatives interested in his estate contact her
4  attorney.

5      18. Unfortunately, six of the relatives who are mentioned in
6  the will of Ysaac Ross with bequests of $25,000.00 refused to honor
7  plaintiff's requests. They repeatedly attempted to contact her
8  regarding the estate, harass, intimidate, threaten, tried to exert
9  undue influence and extort money in an amount in excess of
10  $20,000,000.00.

11      19. The threats of extortion were manifested in many ways,
12  including, the preposterous contention that Ysaac Ross and  Cira
13  were never legally married and that she is not now, nor has ever
14  been his wife.

15      20. When Cira's attorney filed a petition for family allowance
16  in the probate case the petition was objected to by the defendants'
17  law firm on the grounds that Ysaac Ross and Cira were never married
18  and were not now, nor were they ever husband and wife.

19      21. No objection to Cira's request for an allowance as the
20  surviving spouse of Ysaac Ross was ever made by the estate and the
21  petition was granted over the objection of the defendants.

22      22. Thereafter Cira's attorney filed, in the probate case, a
23  spousal property petition which sought a declaration that all the
24  property of the estate is community, based upon Cira's fifty-year
25  (50) marriage to Ysaac Ross.

26      23. Defendants' law firm again objected on the grounds that
27  Ysaac Ross and Cira were not married.

28

SECOND AMENDED COMPLAINT

07

24. After the filing of the spousal petition, defendants put a full court press on Cira in an effort to intimidate and influence her for their own personal financial gain.

25. During the course of the probate case Cira was contacted repeatedly by the defendants who tried to exert undue influence over her in the absence of counsel.

26. On September 21, 2001, Cira received a letter which was hand delivered to her house by an unknown agent of the defendants.

27. Defendant, David Ross, himself an attorney knew that it was improper to communicate with Cira in the absence of her attorney. His continued attempts to influence, oppress and communicate with Cira in the absence of counsel is a violation of the Rules of Professional Conduct.

28. The September 21st letter sought to interfere with Cira's attorney - client relationship and was signed by, inter alia, defendants Parker, Young, Glickman and David Ross. It suggested a personal meeting with Cira without benefit of her attorney and a threatened to force her to pay excessive taxes.

29. Cira thereafter received a phone call from Gloria Karp, David Ross's sister, who also urged Cira to meet with her, without counsel, so that they could discuss her late husband's estate.

30. That phone call was followed by a phone call from David Ross who suggested that Cira meet privately without counsel so that he could do her a "favor" regarding the ongoing estate dispute.

31. Cira refused each of these requests and instructed the defendants Glickman, Parker, Young and David Ross that she did not want to meet with them, did not want them calling and did not want

1  to receive threatening letters from any of them.

2      32. On September 25, 2001, in response to Cira's request that

3  the phone calls and letters stop her attorney had a phone

4  conversation with defendants' counsel, Michael Waddington, a

5  member of defendants' law firm, which was followed up by fax

6  requesting that the defendants cease and desist from all

7  communications with Cira.

8      33.  Despite the cease and desist letter and the phone

9  conversation with defendants' attorney requesting an end to the

10  harassment, David Ross called Cira again on September 26th. He once

11  again suggested a face - to - face meeting, which Cira refused.

12      34. Thereafter Cira received a phone call from David Ross's

13  daughter. Her message was similar to that of her father's.

14      35. The defendants also sought to intimidate Cira by

15  threatening on more than one occasion to report Cira, her

16  accountant and stock broker to the Internal Revenue Service.

17      36. Cira not wishing to meet with any of the defendants, nor

18  wanting them to visit her at her home at 616 High Street filed an

19  action in this court entitled Ross v. Ross Case No. INC 025067.

20  ( hereinafter " elder abuse action.")  The elder abuse action

21  sought damages, a temporary restraining order and preliminary

22  injunction preventing the defendants named in the elder abuse

23  action from unduly influencing Cira by way of phone, letter or

24  personal communication.

25      37. On or about October 3, 2001,  this court issued a

26  temporary restraining order precluding the defendants named in the

27  elder abuse action, and each of them, their agents, employees or

28

-6-

SECOND AMENDED COMPLAINT                          09

1   servants from communicating with Cira and coming within 100 yards

2   of the her and her residence located at 616 High Rd., Palm Springs,

3   California.

4       38. Thereafter the defendants in the elder abuse action, by

5   and through their attorney agreed to a preliminary injunction

6   restraining the defendants in the elder abuse action and each of

7   them, their agents, employees or servants during the pendency of

8   the probate case, from communicating with Cira and coming within

9   100 yards of her and her residence located at 616 High Rd., Palm

10  Springs, California.

11      39. On or about January 18, 2002, in Palm Springs, California,

12  Cira and the defendants entered into what Cira and plaintiff

13  believe to be a  full and complete settlement and resolution of all

14  claims related to the probate case. The settlement was made on the

15  record and in open court. Pursuant to the probate settlement Cira

16  and the parties thereto, including the defendants in this action,

17  agreed to resolve all claims related to the Ysaac Ross estate,

18  including the elder abuse action.

19      40. Pursuant to the probate case settlement Cira agreed to

20  distribute $1,000,000.00 each to certain alleged beneficiaries of

21  her late husband's estate, including the defendants herein Parker,

22  Glickman, Young, Parmentier and David Ross ( hereinafter "the

23  gift"). In consideration therefore the parties to the probate case

24  settlement agreed that the balance of the Ysaac Ross estate, with

25  the exception of for four specific bequests more fully set for in

26  the Ysaac Ross will, was to be distributed to Cira and/or her

27  assignee, plaintiff herein. The parties to the probate case

28

-7-

1  settlement also agreed to mutually release any and all claims

2  related to the Ysaac Ross estate.

3      41. At all times during the settlement negotiations, including

4  but not limited to the execution of the settlement agreement, the

5  individual defendants named herein were represented by the

6  defendant law firm of Ross, Rose & Hammill.

7      42.  On or about February 11, 2002, in furtherance of the

8  settlement the defendants and Cira executed a Distribution

9  Agreement which provided, inter alia, that other than four specific

10  bequests " The balance of the decedent's estate shall be

11  distributed to Cira, or her assignee.." ( A true and correct copy

12  of the Distribution Agreement is attached hereto as Exhibit "A" and

13  made a part hereof.)

14      43. The Distribution Agreement also provided that " The

15  parties hereto agree to execute and deliver such further documents

16  or instruments and take such further action as the parties shall

17  reasonably request to effectuate the intent of the parties

18  expressed herein."

19      44. Thereafter on April 9, 2002, the defendants and Cira

20  executed a written Settlement Agreement and Mutual Release of All

21  Claims. The written Settlement Agreement and Mutual Release

22  formally recited the terms of the settlement agreement which was

23  placed on the record on January 18, 2002. ( A true and correct copy

24  of the Settlement Agreement and Mutual Release is attached hereto

25  as Exhibit "B" and made a part hereof.)

26      45. Pursuant to paragraph 3 of the written Settlement

27  Agreement and Mutual Release Cira agreed to make pay $1,000,000.00

28

SECOND AMENDED COMPLAINT

1  to certain beneficiaries of her late husband's estate, including
2  the individual defendants named herein.

3      46. Pursuant to paragraph 12 of the written Settlement
4  Agreement and Mutual Release the parties thereto, including the
5  defendants, " on behalf of themselves and each of their respective
6  successors and assignees, does hereby fully and forever mutually
7  release and discharge the other parties and each of the
8  predecessors and assigns of the other party and respective
9  stockholders, partners, members, directors, officers, attorney,
10  accountants, consultant, representative employees, agents heirs,
11  successors and assign of the other party, of an from any and all
12  liabilities, claims, demands, contracts, debts, obligations and
13  causes of action, in law, equity, or otherwise, that any party,
14  individually and jointly, has held, now holds, or may hold in the
15  future, whether known or unknown, concealed or hidden, suspected or
16  unsuspected, which was created or arose out of the subject matter
17  of this Agreement."

18      47.  Pursuant to paragraph 13 of the written Settlement
19  Agreement and Mutual Release the parties thereto, including the
20  defendants, agreed that  " once duly executed, shall be effective
21  as a complete and final bar to each and every liability, claim,
22  demand, contract, debt, obligation and cause of action, in law,
23  equity, or otherwise, that he or she has or might have against any
24  other party released herein, as provided by California Civil Code
25  Section 1541. Each party hereby explicitly relinquished and waive
26  all rights and benefits  conferred by the provisions of Section
27  1542 of the California Civil Code."

28

SECOND AMENDED COMPLAINT

-9-

## SECOND AMENDED COMPLAINT

1    48.   Pursuant to paragraph 14 of the written Settlement
2  Agreement and Mutual Release the parties thereto, including the
3  defendants, warranted that " it has not heretofore assigned any
4  rights, claims, caused of action, or defenses released herein and
5  that no other person, firm, corporation, estate or other entity has
6  had or now has any interest in any of the rights, claims, causes of
7  action or defenses release herein. Each party agrees to indemnify
8  and hold harmless each other party from any loss, expense, damage,
9  liability, claim, or demand, including reasonable attorneys' fees
10  and costs, by reason of any actual or purported assigned or
11  transfer of any matter released herein."

12    49.   Pursuant to paragraph 9 of the written Settlement
13  Agreement and Mutual Release the parties thereto, including the
14  defendants herein, agreed that " the Riverside County Superior
15  Court will retain jurisdiction."

16    50. At all times herein mentioned the plaintiff was Cira's
17  assignee and successor in interest under the Settlement Agreement
18  and Mutual Release by virtue of an irrevocable assignment dated
19  March 17, 2002.

20    51. At all times herein mentioned Sylvia Mandel, executor of
21  the Estate of Ysaac Ross, was party to the Settlement Agreement and
22  Mutual Release reached in the probate case.

23    52. At all times herein mentioned the Settlement Agreement and
24  Mutual Release was approved by the probate court and defendants'
25  law firm.

26    53. On or about July 23, 2002,  David Ross acting on behalf of
27  the law firm of Ross, Rose and Hammill filed a creditor claim
28

-10-

1  against the Estate of Ysaac Ross for $1,500,000.00.  The creditor

2  claim is allegedly based upon an oral promise by Ysaac Ross to deed

3  a certain parcel of real property located on the corner of Pico and

4  Alvarado in Los Angeles, California and commonly known as  2101 -

5  2117 West Pico Blvd. ( 1243 - 1247 Alvarado Blvd.( A true and

6  correct copy of the  claim is attached hereto as Exhibit "C" and

7  made a part hereof. )

8      54. On or about July 23, 2002,  David Ross acting on behalf of

9  the law firm of Ross, Rose and Hammill filed a creditor claim

10 against the Estate of Ysaac Ross for $26,861.72.  The creditor

11 claim is allegedly based upon an oral promise by Ysaac Ross to pay

12 attorney fees in unrelated legal matter entitled Ross v. Gonzalez.

13 ( A true and correct copy of the  claim is attached hereto as

14 Exhibit "D" and made a part hereof. )

15     55. On October 1, 2002, Sylvia Mandel, acting as the executor

16 of the Estate of Ysaac Ross sought a court order permitting a

17 preliminary distribution of $15,000,000.00 of estate funds and a

18 fifty percent interest in two parcels of real estate to the

19 plaintiff.

20     56. On or about October 1, 2002, defendant David Ross appeared

21 in court and made an oral objection to the preliminary distribution

22 to plaintiff.

23     57. Thereafter on or about October 8, 2002, David Ross, filed

24 a written objection to the preliminary distribution which the

25 Estate of Ysaac Ross was seeking to disburse to plaintiff.

26     58. On or about October 11, 2002, the plaintiff gave written

27 notice to the defendants, and each of them, of the objections to

28

-11-

SECOND AMENDED COMPLAINT

14

1 | the preliminary distribution made by the David Ross and Ross, Rose
2 | & Hammill, LLP. Additionally, plaintiff have given written notice
3 | to the defendants of the two creditor claims filed by David Ross
4 | acting on behalf of Ross, Rose & Hammill, LLP.

5 |      59. On or about October 11, 2002, the plaintiff requested that
6 | defendants, and each of them, defend against the objections made by
7 | David Ross and Ross, Rose & Hammill, LLP to the preliminary
8 | distribution. Plaintiff also requested that defendants, and each of
9 | them, indemnify and hold harmless the plaintiff from the creditor
10 | claims of defendants' law firm. Defendants refused to indemnify and
11 | hold harmless the plaintiff and the damages that were sustained as
12 | a result are the primary responsibility of the defendants and each
13 | of them.

14 |      60. On November 22, 2002, David Ross appeared before the Hon.
15 | Robert Taylor in the probate case entitled <u>Estate of Ysaac Ross</u> for
16 | the purpose of further oral argument against the preliminary
17 | distribution.

18 |      61. In a minute order dated December 13, 2002, the Hon. Robert
19 | Taylor overruled the objection made by David Ross and defendants'
20 | law firm to the preliminary distribution and granted a preliminary
21 | distribution in the amount of $10,000,000.00.

22 |      62. As a result of the delay in the $10,000,000.00 preliminary
23 | distribution caused by frivolous objections of David Ross and
24 | defendants' law firm the plaintiff has been damaged in a sum not
25 | less than $250,000.00.

26 | ///

27 | //

28 |

## FIRST CAUSE OF ACTION

### ( Fraud & Deceit )

### ( Plaintiff v. David Ross only )

63. Plaintiff hereby refers to and incorporates by reference paragraphs 1 - 62, inclusive of the complaint as though the same was more fully set forth herein.

64. On April 9, 2002, defendant David Ross made the following written representations in the Settlement Agreement and Mutual Release:

a. on behalf of himself and each of his respective successors and assignees, David Ross did fully and forever release and discharge Cira Ross and the estate of Ysaac Ross, their successors and assigns from any and all liabilities, claims, demands, contracts, debts, obligations and causes of action, in law, equity, or otherwise, that David Ross, individually and jointly, has held, now holds, or may hold in the future, whether known or unknown, concealed or hidden, suspected or unsuspected, which relates to the Estate of Ysaac Ross.

b. once duly executed, the Settlement Agreement and Mutual Release shall be effective as a complete and final bar to each and every liability, claim, demand, contract, debt, obligation and cause of action, in law, equity, or otherwise, that David Ross has or might have against Cira Ross and the Estate of Ross.

c. that David Ross has not heretofore assigned any rights or claims against Cira Ross and/or the Estate of Ysaac Ross to Ross, Rose & Hammill, LLP or any other person or entity.

-13-

SECOND AMENDED COMPLAINT

1      d. that no other person, firm, corporation, estate or

2 other entity has had or now has any interest in any of the rights,

3 claims, causes of action against the Estate of Ysaac Ross.

4     65. The representations made by defendant David Ross were in

5 fact false. The true facts were:

6      a. David Ross had a claim of $1,500,000.00 based upon an

7 alleged oral promise made by the decedent, Ysaac Ross, in the year

8 1992, to the effect that " when he ( Ysaac Ross ) passed, he was

9 going to give me ( David Ross) " real property commonly known as

10 2101 - 2117 West Pico and 1243 - 1247 Alvarado

11      b.   David Ross did not the intend Settlement Agreement

12 and Mutual Release of All Claims to be a release of all of his

13 claims in the Estate of Ross nor did he intend that the Settlement

14 Agreement and Mutual Release of All Claims would act as a final bar

15 to each and every claim he had against the Estate of Ross, in

16 particular he did not intend to release his alleged $1,500,000.00

17 claim in the Estate of Ross relating to the Pico and Alvarado real

18 property.

19      c. David Ross had assigned his rights to claims against

20 the Estate of Ysaac Ross, in particular a $1,500,000.00 claim in

21 the Pico and Alvarado property,   to his law firm Ross, Rose &

22 Hammill, LLP.

23      d. The law firm of Ross, Rose & Hammill, LLP did file a

24 claim in the Estate of Ross in the amount of $1,500,000.00. ( A

25 copy of the claim is attached to this complaint as Exhibit "C" and

26 made a part hereof.

27      e. The $1,500,000.00 claim filed by Ross, Rose & Hammill,

28

-14-

**SECOND AMENDED COMPLAINT**

17

1  LLP is based solely upon the alleged oral promise made in the year

2  1992 by Ysaac Ross to David Ross to deed the Pico & Alvarado

3  property to David Ross upon the passing of Ysaac Ross.

4        f. The law firm of Ross, Rose & Hamill, LLP did not exist

5  in the year 1992, when the alleged oral promise upon which the

6  $1,500,000.00 claim is based was allegedly made to David Ross.

7        g. The $1,500,000.00 claim filed by Ross, Rose & Hammill,

8  LLP is based upon an assignment by David Ross to his law firm,

9  Ross, Rose & Hammill, LLP.

10       h. The law firm of Ross, Rose & Hammill, LLP was created

11  in the year 1999 as a result of the ruling in the matter of State

12  Bar of California v. David L. Ross Pet. App. 12a-13a, 43a - 48a in

13  which the California State Bar permanently enjoining David Ross,

14  the Law Offices of David L.Ross from advertising, holding out,

15  directly expressing in writing or verbally, or otherwise from

16  implying that David L. Ross is a California licensed attorney or is

17  practicing or entitled to practice law in the state court courts of

18  California. The judgment further specified that David Ross could

19  employ attorneys duly licensed by the State of California to

20  practice law on their behalf, and could practice law in any federal

21  forum located within California.

22       i. As result of the ruling in State Bar v. David Ross,

23  David Ross established the LLP known as Ross, Rose & Hammill, LLP

24  in 1999 and is the managing partner of defendant's law firm with a

25  joint interest in all assets and accounts receivables.

26       j. David Ross owns, controls and dominates the firm known

27  as Ross, Rose & Hammill, LLP and Ross, Rose & Hammill, LLP is a

28

**SECOND AMENDED COMPLAINT**

18

1 sham and mere instrumentality of David Ross designed to permit
2 David Ross to practice law in the state of California without a
3 license.

4    k. The $1,500,000.00 claim filed by David Ross,
5 ostensibly on behalf of his law firm Ross, Rose & Hammill, LLP is
6 in reality the claim of David Ross, who owns and controls a one
7 hundred percent (100%) interest in the $1,500,000.00 creditor's
8 claim filed by Ross, Rose & Hamill, LLP in the Estate of Ross.

9    l. The filing of the $1,500,000.00 claim in the Estate of
10 Ross, by the law firm known as Ross, Rose & Hammill, LLP was done
11 by David Ross with knowledge of the terms of the Settlement
12 Agreement and Mutual Release and with the intent to avoid the
13 effect of the Settlement Agreement and Mutual Release.

14    66. When the defendant made the aforementioned statements he
15 knew them to be false, and these representations were made by the
16 defendant with the intent to defraud and deceive Cira Ross, the
17 Estate of Ross and plaintiff.

18    67. At the time that defendant, David Ross, made the
19 aforementioned promises he had no intention of performing them.

20    68. The promises were made by the defendant with the intent of
21 inducing Cira Ross to pay defendant $1,000,000.00.

22    69. Plaintiff and Cira Ross, at the time these promises were
23 made, was ignorant of defendant's secret intention not to perform
24 and could not have discovered the secret intention, because
25 defendant made the promises as part of a Settlement Agreement and
26 Mutual Release which plaintiff believed resolved all the claims and
27 that defendant, David Ross, his successors and assigns had in the
28

-16-

SECOND AMENDED COMPLAINT

19

1  Estate of Ross. Had plaintiff and Cira Ross known of the actual

2  intention of David Ross she would not have paid him $1,000,000.00.

3      70. As a proximate result of defendant's fraud and deceit and

4  the facts herein alleged, plaintiff's predecessor did pay to

5  defendant $1,000,000.00.

6      71. As a further and proximate result of the fraud and deceit

7  of defendant, David Ross, the plaintiff has expended time and

8  energy in an attempt to defeat the $1,500,000.00 claim and actions

9  of defendant as herein alleged, by reason of which the plaintiff

10  has been damaged in an amount not less than $10,000.00.

11      72. In doing the things herein alleged, defendant acted with

12  oppression, fraud, and malice, and plaintiff is entitled to

13  punitive damages.

14              **SECOND CAUSE OF ACTION**

15              ( Breach of Contract )

16              ( Plaintiff v. David Ross only )

17      73. Plaintiff hereby refers to and incorporates by reference

18  paragraphs 1 - 62,  inclusive of the complaint as though the same

19  was more fully set forth herein.

20      74. Cira and plaintiff have complied with all the terms and

21  conditions of the aforementioned Settlement Agreement and Mutual

22  Release required on their part to be performed, except to the

23  extent that they are otherwise excused by defendants non -

24  performance.

25      75. On or about July 23, 2002, defendants, and each of them,

26  breached the Settlement Agreement and Mutual Release when David

27

28

1  Ross acting on behalf of defendants' law firm filed the

2  aforementioned creditor claims totaling in excess of $1,526,000.00.

3      76. The $1,500,000.00 claim filed by Ross, Rose & Hammill, LLP

4  is based solely upon the alleged oral promise made in the year 1992

5  by Ysaac Ross to David Ross to deed the Pico & Alvarado property to

6  David Ross upon the passing of Ysaac Ross.

7      77. The law firm of Ross, Rose & Hamill, LLP did not exist in

8  the year 1992, when the alleged oral promise upon which the

9  $1,500,000.00 claim is based was allegedly made to David Ross and

10  the $1,500,000.00 claim filed by Ross, Rose & Hammill, LLP is based

11  upon an assignment from David Ross to his law firm, Ross, Rose &

12  Hamill, LLP.

13      78. The law firm of Ross, Rose & Hammill, LLP was created in

14  the year 1999 as a result of the ruling in the matter of State Bar

15  of California v. David L. Ross Pet. App. 12a-13a, 43a - 48a in

16  which the California State Bar permanently enjoining David Ross,

17  the Law Offices of David L.Ross from advertising, holding out,

18  directly expressing in writing or verbally, or otherwise from

19  implying that David L. Ross is a California licensed attorney or is

20  practicing or entitled to practice law in the state court courts of

21  California. The judgment further specified that David Ross could

22  employ attorneys duly licensed by the State of California to

23  practice law on their behalf, and could practice law in any federal

24  forum located within California.

25      79. As result of the ruling in State Bar v. David Ross, David

26  Ross established the LLP known as Ross, Rose & Hammill, LLP in 1999

27  and is the managing partner of defendant's law firm with a joint

28

**SECOND AMENDED COMPLAINT**

1    interest in all assets and accounts receivables.

2        80. David Ross owns, controls and dominates the firm known as

3    Ross, Rose & Hammill, LLP and Ross, Rose & Hammill, LLP is a sham

4    and mere instrumentality of David Ross designed to permit David

5    Ross to practice law in the state of California without a license.

6        81. The $1,500,000.00 claim filed by David Ross, ostensibly on

7    behalf of his law firm Ross, Rose & Hammill, LLP is in reality the

8    claim of David Ross who owns and controls a one hundred percent

9    (100%) interest in the $1,500,000.00 creditor's claim filed by

10   Ross, Rose & Hamill, LLP in the Estate of Ross.

11       82. The filing of the $1,500,000.00 claim in the Estate of

12   Ross, by the law firm known as Ross, Rose & Hammill, LLP was done

13   by David Ross with knowledge of the terms of the Settlement

14   Agreement and Mutual Release and with the intent to avoid the

15   effect of the Settlement Agreement and Mutual Release.

16       83. On or about October 1, 2002, David Ross further breached

17   the Settlement Agreement and Mutual Release when he filed

18   objections to the preliminary distribution due plaintiff from the

19   Estate of Ysaac Ross.

20       84. As a result of defendant's breach the plaintiff has been

21   damaged in the sum of $1,000,000.00.

22       85. As a further and proximate result of the aforementioned

23   acts, plaintiff was required to and did employ an attorney,

24   Mitchell Sussman, licensed to practice before all the courts of

25   this state and has incurred attorney fees and expenses in a sum

26   not yet ascertained but in no event less than $10,000.00.

27

28

SECOND AMENDED COMPLAINT

2

## THIRD CAUSE OF ACTION

### ( Express Indemnity )

### ( Plaintiff v. Parmentier, Glickman, Parker and Young )

86. Plaintiff hereby refers to and incorporates by reference paragraphs 1 - 72, inclusive of the complaint as though the same was more fully set forth herein.

87. At the time they signed the Settlement Agreement and Mutual Release they were aware of the claims of David Ross and by assignment Ross, Rose & Hammill, LLP to the Pico and Alvarado property. Further, David Ross and Ross, Rose & Hammill, LLP advised the defendant's that they would be filing a $1,500,000.00 claim in the Estate of Ross based upon a purported assignment by David Ross to defendant's law firm.

88. On or about October 11, 2002, the defendants, and each of them, breached the agreement when they refused to indemnify and hold harmless the plaintiff from the actions of David Ross and Ross, Rose & Hammill, LLP.

89. Plaintiff has been damaged and will be damaged as a result of the actions of defendant David Ross defendants, and each of them, continued refusal to indemnify plaintiff from the claims and objections made by David Ross acting on behalf of defendants' law firm.

90. The damages suffered by plaintiff is primarily due to defendants' breach of its contract with plaintiff's assignor and in particular the failure of defendants to honor the mutual release, hold harmless and indemnity agreements.

SECOND AMENDED COMPLAINT

1       91. Plaintiff's liability and the liability of the Estate of

2   Ysaac Ross, if any, to the defendants' law firm arose as a result

3   of no fault of plaintiff, but solely as a result defendants'

4   failure to fulfill its obligations under its contract with

5   plaintiff.

6       92. As a further and proximate result of the aforementioned

7   acts, plaintiff was required to and did employ an attorney,

8   Mitchell Sussman, licensed to practice before all the courts of

9   this state  and has incurred attorney fees and expenses in a sum

10  not yet ascertained but in no event less than $10,000.00.

11                  **FOURTH CAUSE OF ACTION**

12                  ( **Equitable Indemnity** )

13       ( **Plaintiff v. Parmentier, Glickman, Young & Parker** )

14      93. Plaintiffs hereby refers to and incorporates by reference

15  paragraphs 1 – 72, inclusive, as though the same was set forth at

16  this point.

17      94. At the time they signed the Settlement Agreement and

18  Mutual Release they were aware of the claims of David Ross and by

19  assignment Ross, Rose & Hammill, LLP to the Pico and Alvarado

20  property. Further, David Ross and Ross, Rose & Hammill, LLP advised

21  the defendant's that they had and would be filing a claim of

22  $1,500,000.00 in the Estate of Ross based upon a purported

23  assignment from David Ross to defendant's law firm.

24      95. The liability of plaintiff, if any,  to defendants' law

25  firm on the creditor claims results from the active conduct and

26  breaches of the contractual obligations of  defendants, and each of

27  them, under the Settlement Agreement & Mutual Release. Plaintiff's

28

<center>-21-</center>

<center>**SECOND AMENDED COMPLAINT**</center>

24

1   liability, if any,  results  from its passive conduct. In the

2   exercise of equity, substantial justice and good conscience,

3   plaintiff should not be made to bear the burden of any such

4   wrongdoing of defendants.

5       96. As a result of the facts, circumstances and relationships

6   alleged above plaintiff is  entitled to be indemnified and held

7   harmless by defendants, and each of them, in whole or in part, from

8   any claims made by the defendants law firm and as a result of any

9   objections filed by David Ross to the preliminary distribution.

10      97. Despite the fact that on October 11, 2002, plaintiff gave

11  defendants, and each of them, notice and demanded that plaintiff be

12  indemnified from the objections to the preliminary distribution

13  made by David Ross and defendants' law firm and the creditor claims

14  filed by David Ross on behalf of defendants' law firm, the

15  defendants, and each of them, have failed and refused to defend and

16  indemnify plaintiff.

17      98. Notwithstanding  plaintiff's request defendants, and each

18  of them, have denied all liability under the agreements and have

19  refused to  indemnify plaintiff from the judgment, if any, incurred

20  by plaintiff as a result of the creditor claim filed by defendants'

21  law firm and the objections filed by David Ross to the preliminary

22  distribution.

23      99. Plaintiff has been damaged as a result of  defendants, and

24  each of them, continued refusal to indemnify plaintiff.

25      100. As a further and proximate result of the aforementioned

26  acts, plaintiff was required to and did employ an attorney,

27  Mitchell Sussman, licensed to practice before all the courts of

28

SECOND AMENDED COMPLAINT

25

1  this state  and has incurred attorney fees and expenses in a sum

2  not yet ascertained but in no event less than $10,000.00.

3

4                    **FIFTH CAUSE OF ACTION**

5                       ( Declaratory Relief )

6        ( Plaintiff v. Parmentier, Glickman, Young & Parker )

7       101. Plaintiff hereby refers to and incorporates by reference

8  paragraphs 1 - 72, inclusive, as though the same was set forth at

9  this point.

10      102. At the time they signed the Settlement Agreement and

11 Mutual Release they were aware of the claims of David Ross and by

12 assignment Ross, Rose & Hammill, LLP to the Pico and Alvarado

13 property. Further, David Ross and Ross, Rose & Hammill, LLP advised

14 the defendant's that they had and would be filing a claim of

15 $1,500,000.00 in the Estate of Ross.

16      103. On or about October 11, 2002, plaintiff gave written

17 notice to defendants of the claims made by David Ross on behalf of

18 the law firm of Ross, Rose and Hammill, LLP.

19      104. Plaintiff has requested that defendants pay the claim of

20 their attorneys and/or alternatively defend the Estate of Ysaac

21 Ross and the plaintiff from the claims of defendants' law firm.

22      105. Notwithstanding  plaintiff's request, defendants, and

23 each of them, have denied all liability under the agreements and

24 have refused to  indemnify plaintiff from the judgment, if any,

25 incurred by plaintiff as a result of the creditor claim filed by

26 defendants' law firm and the objections filed by David Ross to the

27 preliminary distribution.

28

                          -23-

                SECOND AMENDED COMPLAINT

1    106. Plaintiff has been damaged as a result of defendants,
2    and each of them, continued refusal to indemnify plaintiff.

3    107. As a further and proximate result of the aforementioned
4    acts, plaintiff was required to and did employ an attorney,
5    Mitchell Sussman, licensed to practice before all the courts of
6    this state and has incurred attorney fees and expenses in a sum
7    not yet ascertained but in no event less than $10,000.00.

8    108. An actual controversy has arisen and now exists between
9    plaintiff and defendants in that plaintiff contends that defendants
10   are obligated to indemnify and reimburse plaintiff, in whole or in
11   part, from the creditor claims of defendant attorneys and from the
12   objections filed by David Ross to the preliminary distribution.

13   109. Defendants dispute these contentions and contend that
14   there is no obligation to indemnity plaintiff, in whole or in part,
15   from the creditor claims of defendant attorneys and from the
16   objections filed by David Ross to the preliminary distribution or
17   other expenses incurred by plaintiff arising from the action.

18   110. Plaintiff asks the court to make a declaration
19   apportioning the relative responsibility between plaintiffs and
20   defendants for the creditor claims of defendants' law firm and from
21   the objections filed by David Ross to the preliminary distribution.
22   Such a declaration is necessary and appropriate at this time in
23   order that plaintiff may ascertain the rights and obligations of
24   the parties to each other under.

25                          SIXTH CAUSE OF ACTION
26        ( Plaintiff v. David Ross & Ross, Rose & Hammill, LLP )
                          ( Abuse of Process )
27

28

SECOND AMENDED COMPLAINT

27

1    111. Plaintiff hereby refers to and incorporates by reference

2  paragraphs 1 - 62, inclusive, as though the same were more fully

3  set forth at this point.

4    112. The use of the afordescribed process, to wit, the

5  creditor claims and objections to the preliminary distribution is

6  not authorized in the regular course of the proceeding.

7    113. The $1,500,000.00 creditor claim filed by David Ross,

8  acting on behalf of Ross, Rose and Hammill is not authorized under

9  California law or in the regular course of the proceeding in that

10  the claim is barred by the statute of limitations, statute of

11  frauds, is not provided for in the will of Ysaac Ross and was

12  released as part of the Settlement Agreement and Mutual Release.

13    114. The $26,861.72 creditor claim filed by David Ross, acting

14  on behalf of Ross, Rose and Hammill is not authorized under

15  California law or in the regular course of the proceeding in that

16  the claim is barred by the statute of limitations, statute of

17  frauds and was released as part of the Settlement Agreement and

18  Mutual Release.

19    115. The objection to the $15,000,000.00 preliminary

20  distribution filed by David Ross, acting on behalf of Ross, Rose

21  and Hammill,  is not authorized  under California law or in the

22  regular course of the proceeding in that the defendants have no

23  standing to file the objection since any and all claims by David

24  Ross and/or Ross, Rose and Hammill were released as part of the

25  Settlement Agreement and Mutual Release.

26    116. Defendants conduct was intentional, fraudulent, malicious

27  and done with hatred and ill will and for the sole and ulterior

28

1  purpose and motivation of depriving the plaintiff and plaintiff's

2  assignor, Cira, of the benefits derived from the Settlement

3  Agreement and Mutual Release and in obtaining collateral advantage

4  over the plaintiff.

5      117. Defendants conduct was intentional, fraudulent, malicious

6  and done with hatred and ill will and for the sole and ulterior

7  purpose and motivation of obtaining collateral advantage over the

8  plaintiff and with intent of forcing the plaintiff and plaintiff's

9  assignor, Cira, to instruct Sylvia Mandel to pay the aforementioned

10  creditor claims.

11      118. As a proximate result of the aforementioned acts,

12  plaintiff has been damaged and continues to be damaged in the

13  amount not less than $250,000.00, plus interest thereon at the rate

14  of ten percent per annum from October 1, 2002.

15      119. As a further and proximate result of the aforementioned

16  acts, plaintiff was required to and did employ an attorney,

17  Mitchell Sussman, licensed to practice before all the courts of

18  this state  and has incurred attorney fees and expenses in a sum

19  not yet ascertained but in no event less than $10,000.00.

20      120. As a further and proximate result of the aforementioned

21  acts, the attorney for the Ysaac Ross Estate, William Finestone has

22  and continues to incur attorney fees which it is charging to the

23  Ysaac Ross Estate and which amounts are deductions from the amount

24  due the plaintiff.

25      121. The aforementioned acts of defendants were willful,

26  wanton, malicious, and oppressive, and justify the awarding of

27  exemplary and punitive damages.

28

SECOND AMENDED COMPLAINT

**WHEREFORE**, plaintiff prays for judgment against defendants as follows:

### FIRST CAUSE OF ACTION

1. For general damages in the sum of $1,000,000.00.

2. For special damages in the sum of no less than $10,000.00.

3. For punitive damages according to proof.

### SECOND CAUSE OF ACTION

1. For general damages in a sum of $1,000,000.00 plus interest thereon at the rate of ten percent (10%) per annum from October 1, 2002.

2. For reasonable attorney fees.

3. For costs of suit incurred herein.

4. For such other and further relief as the court deems proper and just.

### THIRD AND FOURTH CAUSE OF ACTION

1. That  defendants, and each of them, be held liable by this court to indemnify and reimburse plaintiffs, in whole or in part, from the creditor claims of defendants' law firm and from the objections filed by David Ross to the preliminary distribution in proportion to  responsibility.

2. For a declaration that defendants have a duty to indemnify plaintiff,  in whole or in part from the creditor claims of defendants' law firm and from the objections filed by David Ross to the preliminary distribution in proportion to responsibility.

### FIFTH CAUSE OF ACTION

1. For a declaration by the court that defendants, and each of them, are obligated in this action to indemnify plaintiff from the

-27-

SECOND AMENDED COMPLAINT

30

1  creditor claims of defendant's law firm and from the objections

2  filed by David Ross to the preliminary distribution in proportion

3  to responsibility.

4  <center>**SIXTH CAUSE OF ACTION**</center>

5     1. For general damages in a sum no less than $250,000.00 with

6  interest thereon at the rate of ten percent (10%) per annum from

7  October 1, 2002.

8     2. For special damages in the sum of no less than $10,000.00.

9     3. For punitive damages according to proof.

10  <center>**ALL CAUSES OF ACTION**</center>

11  1. For costs of suit herein incurred.

12  2.  For such other and further relief as the court deems

13  proper and just.

14  DATED: April __1'__, 2003

15                       Mitchell Reed Sussman

16

17

18

19

20

21

22

23

24

25

26

27

28



Exhibit "A"

## DISTRIBUTION AGREEMENT

THIS DISTRIBUTION AGREEMENT ("Agreement") is dated as of February 11, 2002, for reference purposes, and is made and entered into by and between the following:

SYLVIA MANDEL, as Executor of the Estate of Ysaac Ross, Deceased ("Executor");

CIRA TAPIA ROSS, the Surviving Spouse of Ysaac Ross ("Cira"); and

ANNA YOUNG, BEA SILPA, MORRIS GLICKMAN, IDA RUBIN, LINDA PARMENTIER, GLORIA KARP, DAVID L. ROSS, SUSAN PARKER, ESTHER RICHMOND, and SYLVIA MANDEL (individually as "Beneficiary" and collectively, the "Beneficiaries").

## RECITALS:

A.      YSAAC ROSS died on January 11, 2001, a resident of Riverside County, California. The decedent's Will, dated July 27, 1987, and first Codicil thereto, dated April 16, 1992, was filed with a Petition for Probate and for Special Letters of Administration, whereby Sylvia Mandel and Jason Rubin were appointed Special Co-Administrators of the decedent's estate. Sylvia Mandel, named in the decedent's Will to act as Executor, was appointed Executor of the decedent's estate on January 18, 2002.

B.      Cira and the decedent were married on July 31, 1950, in Orange County, California, fifty years prior to the decedent's death. The decedent was survived by Cira, as his Surviving Spouse, and the Beneficiaries, some of who are named as specific devisees in the decedent's Will and are intestate heirs of the decedent. The decedent was not survived by issue.

C.      The decedent made certain allegations in his Will that his estate consisted of separate property and although he declared himself to be single, he made certain provisions for Cira in the form of specific bequests. The decedent's Will did not dispose of the decedent's entire estate.

D.      On or about September 4, 2001, Cira filed a Spousal Property Petition whereby she sought a judicial determination that the decedent's estate consisted entirely of community property and that therefore she was entitled to one-half of the estate as her community property, and that she was entitled to that portion of the decedent's community property that was not disposed of by his Will. Some of the Beneficiaries objected to various matters filed in the probate proceeding, including Cira's Spousal Property Petition.

E.    A mandatory settlement conference was held on January 18, 2002, followed by a proceeding on February 11, 2002 at which time the Court determined that the decedent's entire estate constituted community property. In accordance therewith, this Agreement confirms the consent of Cira and the Beneficiaries to distribution of the decedent's estate in accordance with the terms herewith.

NOW, THEREFORE, the parties hereto agree as follows:

1.    **Distribution of Probate Estate.** The Executor shall forthwith proceed to file a Petition for Determination of Entitlement to Estate Distribution (Probate Code Section 11700) in the estate proceeding. That petition shall request distribution of the decedent's estate as follows:

(a)    The specific bequest of $25,000.00 cash to Cira as set forth in Article FIFTH of the decedent's Will, is to be distributed to Cira, but no additional amounts are to be paid to Cira under Articles THIRD and SIXTH of the Will.

(b)    The specific pecuniary bequests set forth in Article SIXTH shall be paid, except that the decedent's sister, Dora Ross Glickman, predeceased the decedent, so the $50,000.00 bequest to her instead shall be distributed pursuant to the provisions of Probate Code Section 21110(a).

(c)    The decedent's one-half interest in the real property located at 2454-2460 West Pico Boulevard shall be distributed to Ida Rubin, together with $2,000.00 per month until the earlier of the date of distribution or the sale of the property pursuant to the provisions of Article SEVENTH of the decedent's Will.

(d)    The decedent's one-half interest in the real property located at 2101-2117 West Pico Boulevard (1243-1247 Alvarado Boulevard) shall be distributed to Sylvia Mandel pursuant to the provisions of Article EIGHTH, Subparagraph (g) of the Will, as amended by Paragraph 2 of the decedent's Codicil.

(e)    The balance of the decedent's estate shall be distributed to Cira, or her assignee, as decedent's community property under the intestate provisions of Probate Code Section 6401(a).

2.    **Governing Law.** This Agreement shall be governed by and construed under the laws of the State of California applicable to contracts made in such state, without reference to conflicts of law principles.

3.    **Further Cooperation.** The parties hereto agree to execute and deliver such further documents or instruments and take such further actions as the parties shall reasonably request to effectuate the intent of the parties as expressed herein.

4.    **Counterpart and Facsimile/Photocopy Signatures.** This Agreement may be signed in any number of counterparts, each of which shall be deemed an original and all of which shall be deemed one and the same instrument. A facsimile or photocopy shall be deemed to have the same force and effect as an original.

5.    **Deemed to be Prepared by All Parties.** In interpreting this Agreement it shall be deemed that it was prepared by all of the parties jointly and no ambiguity shall be resolved against any party on the premise that it or its attorneys was responsible for having drafted this Agreement or the provision at issue.

6.    **Full Authority.** Each signatory to this Agreement represents and warrants that he or she has the full authority and power to bind the party for whom he or she is executing this Agreement.

**IN WITNESS WHEREOF**, the parties have duly executed this Agreement as of the date first set forth above.

Executor:

_____
SYLVIA MANDEL

Cira:

_____
CIRA TAPIA ROSS

Beneficiaries:

_____
ANNA YOUNG

_____
BEA SILPA

_____
MORRIS GLICKMAN

_____
IDA RUBIN

_____
LINDA PARMENTIER

_____
GLORIA KARP

Beneficiaries:

_____
DAVID L. ROSS

_____
SUSAN PARKER

_____
ESTHER RICHMOND

_____
SYLVIA MANDEL

Exhibit "B"

## SETTLEMENT AGREEMENT
## AND MUTUAL RELEASE OF ALL CLAIMS

THIS SETTLEMENT AGREEMENT AND MUTUAL RELEASE OF ALL CLAIMS ("Agreement") is dated as of April 9, 2002, for reference purposes, and is made and entered into by and between the following:

SYLVIA MANDEL, as Executor of the Estate of Ysaac Ross, Deceased ("Executor");

CIRA TAPIA ROSS, the Surviving Spouse of Ysaac Ross ("Cira"); and

ANNA YOUNG, BEA SILPA, MORRIS GLICKMAN, IDA RUBIN, LINDA PARMENTIER, GLORIA KARP, DAVID L. ROSS, SUSAN PARKER, ESTHER RICHMOND, and SYLVIA MANDEL (individually as "Beneficiary" and collectively, the "Beneficiaries").

### RECITALS:

A.     YSAAC ROSS died on January 11, 2001, a resident of Riverside County, California ("Decedent"). The Decedent's Will, dated July 27, 1987, and first Codicil thereto, dated April 16, 1992, was filed with a Petition for Probate and for Special Letters of Administration, whereby Sylvia Mandel and Jason Rubin were appointed Special Co-Administrators of the Decedent's estate. Sylvia Mandel, named in the Decedent's Will to act as Executor, was appointed Executor of the Decedent's estate on January 18, 2002.

B.     Cira and the Decedent were married on July 31, 1950, in Orange County, California, fifty years prior to the Decedent's death. The Decedent was survived by Cira, as his Surviving Spouse, and the Beneficiaries, some of who are named as specific devisees in the Decedent's Will and are intestate heirs of the Decedent. The Decedent was not survived by issue.

C.     The Decedent made certain allegations in his Will that his estate consisted of separate property and although he declared himself to be single, he made certain provisions for Cira in the form of specific bequests. The Decedent's Will did not dispose of the Decedent's entire estate.

D.     On or about September 4, 2001, Cira filed a Spousal Property Petition whereby she sought a judicial determination that the Decedent's estate consisted entirely of community property and that therefore she was entitled to one-half of the estate as her community property, and that she was entitled to that portion of the Decedent's community property that was not disposed of by his Will. Some of the Beneficiaries objected to various matters filed in the probate proceeding, including Cira's Spousal Property Petition.

E.     A mandatory settlement conference was held on January 18, 2002, and the

38

ties hereto reached a settlement which was placed on the record. The purpose of this
greement is to memorialize that settlement in accordance with the terms thereof.

NOW, THEREFORE, the parties hereto agree as follows:

1.    **Estate Consists of Community Property.** The parties hereto
acknowledge that all property owned by the Decedent and Cira, whether in their individual names
or in their joint names, constitutes their community property. The Beneficiaries withdrew their
objections to Cira's Spousal Property Petition which proceeded to trial on February 11, 2002.
Upon judicial determination that all property was community property, one-half of the community
property estate was set aside to Cira or her assignee, and the Decedent's one-half interest was to
be held by the Executor and distributed pursuant to court order in that proceeding, as further set
forth in Paragraph 2 of this Agreement.

2.    **Distribution of Probate Estate.** The Executor filed a Petition for
Determination of Entitlement to Estate Distribution (Probate Code Section 11700) ("Petition") in
the estate proceeding. The Petition requested distribution of the Decedent's estate as follows:

(a)    The specific bequest of $25,000.00 cash to Cira as set forth in
Article FIFTH of the Decedent's Will, is to be distributed to Cira, but no additional amounts are
to be paid to Cira under Articles THIRD and SIXTH of the Will.

(b)    The specific pecuniary bequests set forth in Article SIXTH shall be
paid, except that the Decedent's sister, Dora Ross Glickman, predeceased the Decedent, so the
$50,000.00 bequest to her instead shall be distributed pursuant to the provisions of Probate Code
Section 21110(a).

(c)    The Decedent's one-half interest in the real property located at
2454-2460 West Pico Boulevard shall be distributed to Ida Rubin, together with $2,000.00 per
month until the earlier of the date of distribution or the sale of the property pursuant to the
provisions of Article SEVENTH of the Decedent's Will.

(d)    The Decedent's one-half interest in the real property located at
2101-2117 West Pico Boulevard (1243-1247 Alvarado Boulevard) shall be distributed to Sylvia
Mandel pursuant to the provisions of Article EIGHTH, Subparagraph (g) of the Will, as amended
by Paragraph 2 of the Decedent's Codicil.

(e)    The balance of the Decedent's estate shall be distributed to Cira, or
her assignee, as Decedent's community property under the intestate provisions of Probate Code
Section 6401(a).

The Executor's Petition was approved on April 9, 2002.

3.    **Gift by Cira.** Cira acknowledges that although the estate constitutes
community property, it is her desire that the Beneficiaries, being some of Decedent's surviving

2

39

family members, receive a portion of the community property estate in addition to the specific bequests provided in the Decedent's Will. Accordingly, Cira will make a gift of $1,000,000.00 to each of the Beneficiaries within three (3) business days after Cira and that Beneficiary have executed this Agreement. The date of the gift shall be the date the funds comprising the gift clear with the Escrow Holder, hereinafter set forth ("date of gift"). Cira shall make the gift from funds received by her as her community property and not from funds distributable to her from the Decedent's probate estate.

The parties hereto acknowledge that the gift made by Cira is a bona fide gift without consideration.

4.    **2002 Gift Tax Returns.** Cira, as the donor, shall be responsible for and shall pay all gift taxes on the gifts made to the Beneficiaries. Cira shall be responsible for filing all required federal gift tax returns for the 2002 calendar year, due on or before April 15, 2003.

5.    **Decedent's Federal Estate Tax Return.** The Executor has filed the federal estate tax return for the Decedent's estate reflecting the tax liability based on the judicial determination that the Decedent's entire estate is community property and that the portion of the estate distributable to Cira will qualify for the marital deduction (subject to adjustment for distributions pursuant to the family allowance). The Executor has requested an early discharge from personal liability under Section 2204 of the Internal Revenue Code.

6.    **Beneficiary's Deposit.** The gift by Cira provided for in Section 3 of this Agreement shall be made payable to each Beneficiary and Union Bank, 9460 Wilshire Boulevard, Beverly Hills, California ("Escrow Holder") and deposited by the Beneficiary in a separate irrevocable escrow account at Escrow Holder (See Attachment 'A' for each account) and shall be distributed pursuant to the following terms and conditions:

(a)    Concurrently upon deposit of the gift by each Beneficiary and confirmation of available funds, the following amounts shall be paid by the Beneficiary and Escrow Holder to the law firm of Ross, Rose & Hammill ("Law Firm"), less any previous sums paid by the Beneficiary to that law firm for matters pertaining to the estate of Ysaac Ross, deceased:

| | |
|---|---|
| Ida Rubin | $ 15,000.00 |
| Esther Richmond | 15,000.00 |
| Sylvia Mandel | 15,000.00 |
| Bea Silpa | 30,000.00 |
| Gloria Karp | 30,000.00 |
| Morris Glickman | 30,000.00 |
| Susan Parker | 30,000.00 |
| Linda Parmentier | 30,000.00 |
| Anna Young | 30,000.00 |
| TOTAL | $225,000.00 |

40

The foregoing sums shall constitute attorneys' fees paid by each of the above named Beneficiaries to the Law Firm for services rendered in this proceeding. Escrow Holder may rely solely on the written statement of the Law Firm as to the previous sums paid by that beneficiary for services rendered in this proceeding, and neither Cira or Escrow Holder shall otherwise be concerned.

(b)    Each Beneficiary and Escrow Holder shall then make a gift in the sum of $10,000.00 to the Decedent's grandniece, Sara Richmond.

(c)    Each Beneficiary and Escrow Holder shall then disburse to the Beneficiary the sum of $300,000.00, less the amounts distributed by each Beneficiary as provided in Subparagraphs (a) and (b) above.

(d)    The balance of each Beneficiary's $700,000.00 shall be held by the Beneficiary and Escrow Holder in accordance with the terms set forth in Paragraph 7.

7.    **Holdback.** The balance of the Beneficiary's gift shall be held, managed and distributed as follows:

(i)    The Beneficiary shall provide his or her social security number and shall be responsible for reporting all income generated on said account for income tax purposes. The Beneficiary shall be entitled to invest the funds in Escrow Holder's money market or savings account, U.S. Treasury obligations or corporate bonds (Moody AAA) and shall receive 45% of the net income generated by the Beneficiary's account on an annual basis, distributable quarterly or in other convenient installments.

(ii)    In the event of Cira's death within three years of the date of the gift thereby causing the gift tax paid by her on the $1,000,000.00 gift provided for in Section 3 to be included in her estate for estate tax purposes, the Beneficiary and Escrow Holder shall, subject to the claim procedure set forth in Paragraph 8, distribute to Cira's personal representative or trustee an amount equal to the increase in her estate taxes resulting from such inclusion but no more than $250,000.00. Each Beneficiary's holdback shall be subject to a claim based on the gift tax inclusion for his or her gift only. On the earlier of (1) three years after the date of the gift, or (2) the death of Cira within the period that ends three years after the date of the gift, the Beneficiary shall be entitled to withdraw any remaining portion of the $250,000.00, plus accrued but undistributed income generated thereon, from the escrow account established for that Beneficiary.

(iii)    In the event any additional estate taxes are assessed on the assets in the Decedent's estate as a result of the recharacterization of the Decedent's estate as separate property such that the gift from Cira shall be deemed a bequest received by the Beneficiary from the Decedent and thus not qualified for the marital deduction in his estate, the Beneficiary and Escrow Holder shall, subject to the claim procedure set forth in Paragraph 8,

4

41

stribute to Cira, or her personal representative or trustee, an amount equal to the increase in Decedent's estate taxes attributable to Cira's gift to the Beneficiary resulting from such recharacterization, but no more than $450,000.00. Each Beneficiary's holdback shall be subject to a claim for estate taxes based on his or her gift only. Three years following the filing of the federal estate tax return for the Decedent (including the Executor's request for early audit under IRC 2204), or earlier should the return be audited and accepted by the Internal Revenue Service, or alternatively, accepted in writing by the Internal Revenue Service without an audit as filed, thus releasing the Executor from liability therefor, the Beneficiary shall be entitled to withdraw any remaining portion of the $450,000.00, plus accrued but undistributed income generated thereon from the escrow account established for that Beneficiary.

8.    **Claim Procedure.** In the event that Cira or Cira's personal representative or Trustee believes that she is entitled to reimbursement as provided above, notice shall be given to each Beneficiary and Escrow Holder for which a claim is or may be sought under Paragraph 7. Such notice shall be given within thirty (30) days after Cira, her personal representative or trustee, obtains knowledge of such claim. In the event that the Beneficiary disputes the amount of the claim by Cira, her personal representative or trustee, then either Cira, her personal representative or trustee or the Beneficiary shall, within 30 days thereafter, file a motion seeking judicial determination and resolution as provided in Paragraph 9. Upon receipt of a written claim by Cira, Escrow Holder shall not distribute that portion of the holdback subject to the claim without a written mutual agreement of Cira, her personal representative or trustee, and the Beneficiary, or upon receipt of a court order authorizing Escrow Holder to do so as provided in Paragraph 9. In any third party audit or proceeding, administrative or otherwise, and during negotiation or arbitration, if any, each Beneficiary shall have the right to participate, individually or through legal counsel of the Beneficiary's choice, and to otherwise participate in the defense of the claim at the Beneficiary's expense. In any claim dispute, Escrow Holder need not be involved and the parties to this Settlement Agreement agree to release and hold harmless Escrow Holder from any cost, liability or expense associated therewith.

9.    **Court Jurisdiction.** All parties acknowledge that this is a court supervised settlement and that the Riverside County Superior Court will retain jurisdiction under CCP 664.6. The provisions of this Agreement may be enforceable by motion and subsequent judgment in any proceeding brought for that purpose.

10.    **Designation of Survivor.** Each Beneficiary may designate a recipient of the balance of the account should the Beneficiary die during the holdback period. Further, each Beneficiary may designate his or her revocable trust, in which the Beneficiary is a trustor and trustee, as the designated beneficiary of that account. Notwithstanding such designation, any successor to that account shall be subject to holdback and indemnification provisions for the time periods provided herein and subject to all the conditions of this Settlement Agreement.

11.    **No Admission of Liability.** This Agreement is a mutual compromise and is not intended to be nor shall be construed as an admission of liability by any party hereto or any of their respective agents, employees or representatives, nor shall it be construed as an admission

5

42

any claim or cause of action is without merit. The parties hereto hereby explicitly deny any legal liability of any kind arising out of this matter and enter into this Agreement only as the most efficient way to economically terminate all disputes arising therefrom and relating thereto.

12.    **Mutual Release.** Except for the executory provisions of this Agreement, each party, the Executor, Cira and the Beneficiaries, on behalf of themselves and each of their respective successors and assigns, does hereby fully and forever mutually release and discharge the other parties hereto and each of the predecessors, successors and assigns of the other party and respective stockholders, partners, members, directors, officers, attorneys, accountants, consultants, representatives, employees, agents, heirs, successors and assigns of the other party, of and from any and all liabilities, claims, demands, contracts, debts, obligations and causes of action, in law, equity, or otherwise, that any party, individually and jointly, has held, now holds, or may hold in the future, whether known or unknown, concealed or hidden, suspected or unsuspected, which was created or arose out of the subject matter of this Agreement. This release shall specifically include, but shall not be limited to, any claims or causes of action, past, present or future, as well as claim based on elder abuse against Cira and any pending temporary restraining orders or preliminary injunctions now existing.

13.    **General Release.** Each party hereto intends this Agreement, once duly executed, shall be effective as a complete and final bar to each and every liability, claim, demand, contract, debt, obligation and cause of action, in law, equity or otherwise, that he or she has or might have against any other party released herein, as provided by California Civil Code Section 1541. Each party hereby explicitly relinquishes and waives all rights and benefits conferred by the provisions of Section 1542 of the California Civil Code, which reads as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

Each party hereto represents that the party has read and understands the foregoing provisions of California Civil Code Section 1542, and in so waiving such provision, the parties hereby acknowledge that they may hereafter discover facts in addition to or different from those which they now believe to be true with respect to the matters herein released, but agree that they have taken that possibility into account in determining the amount of consideration to be given under this Agreement, and that the general releases herein given shall be and remain in effect as full and complete general releases notwithstanding the discovery or existence of any such additional or different facts, of which the parties expressly assume the risk.

14.    **Non-Assignment of Claims.** Each party hereto represents and warrants that it has not heretofore assigned any rights, claims, causes of action, or defenses released herein and that no other person, firm, corporation, estate, or other entity has had or now has any interest in any of the rights, claims, causes of action, or defenses released herein. Each party agrees to indemnify and hold harmless each other party from any loss, expense, damage, liability, claim, or

demand, including reasonable attorneys' fees and costs, by reason of any actual or purported assignment or transfer of any matter released herein.

15.    **Consultation with Legal Counsel.** Each party to this Agreement represents that it has been advised to or has consulted with independent legal counsel and secured independent advice and consultation concerning every aspect of this Agreement and the rights and liabilities he is hereby relinquishing.

16.    **Attorneys' and Accountants' Fees and Costs.** Each party hereto agrees to bear its own legal and accounting fees and costs relating to this Agreement, and each hereby waives any and all claims it may have against the other, individually or severally, for attorneys' and accountants' fees or costs, except that in the event an action or proceeding is brought to enforce the terms of this Agreement the prevailing party shall be entitled to recover reasonable attorneys', accountants' and/or professional consultants' fees and costs.

17.    **Notices.** All notices, demands, approvals and other communications required to be in writing under this Agreement shall be delivered to the appropriate party at its address set forth following his or her signature to this Agreement. Addresses for notice may be changed from time to time by written notice to all other relevant parties. All notices or other communications required or permitted hereunder shall be in writing, and shall be personally delivered or sent by certified mail, postage prepaid, return receipt requested, telegraphed, hand-delivered or sent by facsimile transmission (with confirmation copy by U.S. mail) and shall be deemed received upon the earlier of (i) if personally delivered, the date of delivery to the address of the person to receive such notice, (ii) if mailed, the date shown as the date of delivery on the return slip verifying delivery, or (iii) if faxed, the date of the confirmed facsimile transmission.

18.    **Entire Agreement.** This Agreement contains the entire agreement of the parties, and any other promise or inducement, representation, oral or written, not set forth in this Agreement shall have no force and effect.

19.    **Amendments.** Any amendment or modification of this Agreement shall be valid only if in writing and signed by the parties to be bound.

20.    **Successors and Assigns.** This Agreement shall be binding upon and inure to the benefit of the heirs, executors, administrators, successors, assigns and representatives of each party.

21.    **Governing Law.** This Agreement shall be governed by and construed under the laws of the State of California applicable to contracts made in such state, without reference to conflicts of law principles.

22.    **Further Cooperation.** The parties hereto agree to execute and deliver such further documents or instruments and take such further actions as the parties shall reasonably request to effectuate the intent of the parties as expressed herein.

7

44

23. **Counterpart and Facsimile/Photocopy Signatures.** This Agreement may be signed in any number of counterparts, each of which shall be deemed an original and all of which shall be deemed one and the same instrument. A facsimile or photocopy shall be deemed to have the same force and effect as an original.

24. **Deemed to be Prepared by All Parties.** In interpreting this Agreement it shall be deemed that it was prepared by all of the parties jointly and no ambiguity shall be resolved against any party on the premise that it or its attorneys was responsible for having drafted this Agreement or the provision at issue.

25. **Full Authority.** Each signatory to this Agreement represents and warrants that he or she has the full authority and power to bind the party for whom he or she is executing this Agreement.

**IN WITNESS WHEREOF**, the parties have duly executed this Agreement as of the date first set forth above.

**Executor:**

SYLVIA MANDEL

Address: c/o Walter, Finestone & Richter
11601 Wilshire Blvd., Suite 1900
Los Angeles, CA 90025

**Cira:**

CIRA TAPIA ROSS

Address: 616 High Road
Palm Springs, CA 92262

**Beneficiaries:**

ANNA YOUNG

Address: 16456 Westfall Place
Encino, CA 91436

BEA SILPA

Address: 16611 Adlon Road
Encino, CA 91436

8

**Beneficiaries:**

MORRIS GLICKMAN

Address: 15422 Milldale Drive
Los Angeles, CA 90077-1601

IDA RUBIN

Address: 5727 Etiwanda Drive, Unit 1
Tarzana, CA 91356

LINDA PARMENTIER

Address: 1766 Nuevo Road
Henderson, NV 98014

GLORIA KARP

Address: 23425 Park Hermosa
Calabasas, CA 91302

DAVID L. ROSS

Address: 715 N. Hillcrest Road
Beverly Hills, CA 90210

SUSAN PARKER

Address: 6003 County Oak Road
Woodland Hills, CA 91367-1085

ESTHER RICHMOND

Address: 2804 Medill Place
Los Angeles, CA 90064

SYLVIA MANDEL

Address: 3839 Royal Woods Drive
Sherman Oaks, CA 91403

9



(323) 653-1724
(323) 653-7414

OSE & HAMMILL, LLP
ilshire Blvd., Suite 634
y Hills, CA 90211

(Name):

OR COURT OF CALIFORNIA, COUNTY OF **RIVERSIDE**

ET ADDRESS: 46-200 Oasis St.

NG ADDRESS: same

AND ZIP CODE: Indio 92201-5961

RANCH NAME: Indio-Larson Justice Center

E OF (Name):

AC ROSS

DECEDENT

## CREDITOR'S CLAIM

CASE NUMBER:
**INP 017504**

ust file this claim with the court clerk at the court address above before the LATER of (a) four months after the date letters
rity to act for the estate) were first issued to the personal representative, or (b) sixty days after the date the Notice of
istration was given to the creditor, if notice was given as provided in Probate Code section 9051. **You** must also mail or
r a copy of this claim to the personal representative and his or her attorney. A proof of service is on the reverse.
NING: Your claim will in most instances be invalid if you do not properly complete this form, file it on time with the court, and
r deliver a copy to the personal representative and his or her attorney.

amount of the claim:  $ 1,500,000.00

nt (name): ROSS, ROSE & HAMMILL, LLP

☐ an individual

☐ an individual or entity doing business under the fictitious name of (specify):

☐ a partnership. The person signing has authority to sign on behalf of the partnership.
☐ a corporation. The person signing has authority to sign on behalf of the corporation.
☒ other (specify): Limited Liability Partnership · The person signing has authority to sign
ress of claimant (specify): 8383 Wilshire Blvd., Suite 634          on behalf of the LLP.
Beverly Hills, CA 90211

nant is    ☒  the creditor    ☐  a person acting on behalf of creditor (state reason):

**RECEIVED**

JUL 2 3 2002

FINESTONE, RICHTER &
VITAL

☐ Claimant is    ☒  the personal representative    ☐  the attorney for the personal representative.
n authorized to make this claim which is just and due or may become due. All payments on or offsets to the claim have been
lited. Facts supporting the claim are    ☒  on reverse    ☐  attached.
re under penalty of perjury under the laws of the State of California that the foregoing is true and correct.
uly 18, 2002

David L. Ross
(TYPE OR PRINT NAME AND TITLE)

▶ (SIGNATURE OF CLAIMANT)

## INSTRUCTIONS TO CLAIMANT

the reverse, itemize the claim and show the date the service was rendered or the debt incurred. Describe the item or service in
ail, and indicate the amount claimed for each item. Do not include debts incurred after the date of death, except funeral claims.
he claim is not due or contingent, or the amount is not yet ascertainable, state the facts supporting the claim.
he claim is secured by a note or other written instrument, the original or a copy must be attached (state why original is unavailable).
secured by mortgage, deed of trust, or other lien on property that is of record, it is sufficient to describe the security and refer to
e date or volume and page, and county where recorded. (See Prob. Code, § 9152.)
ail or take this original claim to the court clerk's office for filing. If mailed, use certified mail, with return receipt requested.
ail or deliver a copy to the personal representative and his or her attorney. Complete the Proof of Mailing or Personal Delivery on
e reverse.
e personal representative or his or her attorney will notify you when your claim is allowed or rejected.
laims against the estate by the personal representative and the attorney for the personal representative must be filed within the
iim period allowed in Probate Code section 9100. See the notice box above.

(Continued on reverse)

CREDITOR'S CLAIM
(Probate)

Probate Code, §§ 9000 et seq., 9153

m Approved by the
il Council of California
(Rev. January 1, 1998)

Council Forms for HotDocs™
datory Form

48

ROSS
DECEDENT    NP 017504

## FACTS SUPPORTING THE CREDITOR'S CLAIM

☐ See attachment *(if space is insufficient)*

| e of Item | Item and supporting facts | Amount claimed |
|---|---|---|
| | Per promise by decedent to compensate Ross, Rose & Hammill, LLP ("RRH") and its predecessor firm, and in detrimental reliance thereof, RRH acted on behalf of decedent and obtained a full insurance settlement of $1,500,000 for decedent's property located at 2101 West Pico, L.A., CA 90006 ("property") which was burned down. RRH subsequently rebuilt the property including arranging architect, contractors, etc., overseeing entire project as well as defending against contractors' suits (such as G & G Case). Decedent promised that after his death the property or equal value would pass to RRH. The present day value is estimated at $1,500,000.00. | $1,500,000.00 |
| | TOTAL: | $1,500,000.00 |

PROOF OF [X] MAILING   ☐ PERSONAL DELIVERY   TO PERSONAL REPRESENTATIVE

(Be sure to mail or take the original to the court clerk's office for filing)

..m the creditor or a person acting on behalf of the creditor. At the time of mailing or delivery I was at least 18 years of age.
.y residence or business address is *(specify):*   8383 Wilshire Blvd., Suite 634
Beverly Hills, CA 90211

..nailed or personally delivered a copy of this *Creditor's Claim* to the personal representative as follows *(check either a or b below):*
[X] Mail. I am a resident of or employed in the county where the mailing occurred.
  (1) I enclosed a copy in an envelope AND
   (a) [X] deposited the sealed envelope with the United States Postal Service with the postage fully prepaid.
   (b) ☐ placed the envelope for collection and mailing on the date and at the place shown in items below following our ordinary business practices. I am readily familiar with this business' practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully prepaid.
  (2) The envelope was addressed and mailed first-class as follows:
   (a) Name of personal representative served:   Sylvia Mandel, Executor
   (b) Address on envelope:   c/o William Finestone, Esq.
   Walter, Finestone & Richter
   (c) Date of mailing: 07-18-2002   11601 Wilshire Blvd., #1900, Los Angeles,
   (d) Place of mailing *(city and state):* Los Angeles, CA   CA 90025

b. ☐ Personal delivery. I personally delivered a copy of the claim to the personal representative as follows:
  (1) Name of personal representative served:
  (2) Address where delivered:

  (3) Date delivered:
  (4) Time delivered:

..eclare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

..te: July 18, 2002

. . . DAVID L. ROSS . . . . . . . . .
(TYPE OR PRINT NAME OF CLAIMANT)

▶ *(signature)*
(SIGNATURE OF CLAIMANT)

49

# Exhibit "D"

B & HAMMILL, LLP
re Blvd., Suite 634
ts, CA 90211

(323) 653-7414

OURT OF CALIFORNIA, COUNTY OF RIVERSIDE
RESS: 46-200 Oasis St.
DDRESS: same
ZIP CODE: Indio 92201-5961
NCH NAME: Indio-Larson Justice Center
OF (Name):

C ROSS

DECEDENT

## CREDITOR'S CLAIM

CASE NUMBER:

INP 017504

st file this claim with the court clerk at the court address above before the LATER of (a) four months after the date letters
ty to act for the estate) were first issued to the personal representative, or (b) sixty days after the date the Notice of
stration was given to the creditor, if notice was given as provided in Probate Code section 9051. You must also mail or
a copy of this claim to the personal representative and his or her attorney. A proof of service is on the reverse.
ING: Your claim will in most instances be invalid if you do not properly complete this form, file it on time with the court, and
deliver a copy to the personal representative and his or her attorney.

amount of the claim: $ 26,861.72

nt (name): ROSS, ROSE & HAMMILL, LLP

☐ an individual.

☐ an individual or entity doing business under the fictitious name of (specify):

☐ a partnership. The person signing has authority to sign on behalf of the partnership.

☐ a corporation. The person signing has authority to sign on behalf of the corporation.

☐ other (specify): Limited Liability Partnership.  The person signing has authority to sign
ress of claimant (specify): 8383 Wilshire Blvd., Suite 634        on behalf of the LLP.
                            Beverly Hills, CA 90211

nant is   [X]  the creditor   ☐  a person acting on behalf of creditor (state reason):

**RECEIVED**

**JUL 2 3 2002**

**FINESTONE, RICHTER &
VITTAL**

☐ Claimant is   [X]  the personal representative   ☐  the attorney for the personal representative.
n authorized to make this claim which is just and due or may become due. All payments on or offsets to the claim have been
ited. Facts supporting the claim are   ☐  on reverse   [X]  attached.
re under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

July 1X, 2002

David L. Ross
(TYPE OR PRINT NAME AND TITLE)

▶ [signature]

(SIGNATURE OF CLAIMANT)

## INSTRUCTIONS TO CLAIMANT

n the reverse, itemize the claim and show the date the service was rendered or the debt incurred. Describe the item or service in
ail, and indicate the amount claimed for each item. Do not include debts incurred after the date of death, except funeral claims.
the claim is not due or contingent, or the amount is not yet ascertainable, state the facts supporting the claim.
secured by a note or other written instrument, the original or a copy must be attached (state why original is unavailable).
secured by mortgage, deed of trust, or other lien on property that is of record, it is sufficient to describe the security and refer to
e date or volume and page, and county where recorded. (See Prob. Code, § 9152.)
ail or take this original claim to the court clerk's office for filing. If mailed, use certified mail, with return receipt requested.
ail or deliver a copy to the personal representative and his or her attorney. Complete the Proof of Mailing or Personal Delivery on
e reverse.
he personal representative or his or her attorney will notify you when your claim is allowed or rejected.
laims against the estate by the personal representative and the attorney for the personal representative must be filed within the
aim period allowed in Probate Code section 9100. See the notice box above.

(Continued on reverse)

rm Approved by the
al Council of California
2 (Rev. January 1, 1998)

## CREDITOR'S CLAIM
(Probate)

Probate Code, §§ 9000 et seq., 9153

l Council Forms for HotDocs™

ndatory Form

## VERIFICATION

State of California, County of Los Angeles

I am the PLAINTIFF- and am executing this verification in that capacity in the above entitled action.

I have read the - COMPLAINT - and know the contents thereof, and I certify that the same is true of my own knowledge, except as to those matters which are therein stated upon my information and belief, and as to those matters I believe them to be true..

I declare under penalty of perjury that the foregoing is true and correct and that this verification has been executed on _____ at Los Angeles, California.