75

EXHIBIT E

3-15

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 977(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 977(b). This opinion has not been certified for publication or ordered published for purposes of rule 977.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| JASON RUBIN, as Co-Trustee, etc., et al., | |
| Plaintiffs and Respondents, | E035674 |
| v. | (Super.Ct.No. INC031863) |
| DAVID ROSS et al., | OPINION |
| Defendants and Appellants. | |



JAN 1 1 2005

COURT OF APPEAL FOURTH DISTRICT

APPEAL from the Superior Court of Riverside County. Lawrence W. Fry, Judge. Affirmed.

Robert Gentino for Defendants and Appellants.

Mitchell Reed Sussman for Plaintiffs and Respondents.

Defendants David Ross (Ross) and Ross, Rose & Hammill (RR&H, collectively Defendants) appeal from an order denying their special motion to strike under Code of Civil Procedure section 425.16, the anti-SLAPP (strategic lawsuit against public participation) statute. They claim that they established that the complaints against them arose out of acts in furtherance of their right to petition and that the plaintiffs thereafter

1

76

failed to establish a prima facie case on any of the three causes of action at issue. We affirm.

FACTS AND PROCEDURAL HISTORY

On April 9, 2002, a settlement agreement (the Agreement) was entered between the executor of the estate of Ysaac Ross (the Estate), Cira Tapia Ross, the surviving spouse of Ysaac Ross, Ross, and others not party to this appeal. The Agreement provided that in exchange for a payment of $1,000,000 from Cira Ross as a gift from her community property share of the Estate, in addition to any specific bequests in Ysaac Ross's will, Ross and the others would fully release the other parties to the Agreement from all claims, demands and causes of action, known or unknown, that any party had or would have, individually or jointly, which was created by or arose out of the subject matter of the Agreement, to wit, the distribution of Ysaac Ross's estate. It also provided that no party had assigned any rights, claims or causes of action that were subject to the release.

Thereafter, Ross, on behalf of RR&H, filed two creditor's claims against the Estate in the amount of $1,500,000 and $26,861.72. The first claim was based upon Ysaac Ross's promise to transmit property, or equal value, to RR&H upon his death in exchange for services rendered in relation to the property after the structures thereon burned down. The second claim was based upon legal services rendered in connection with an unlawful detainer action. Ross and RR&H also filed objections to a preliminary distribution of funds from the Estate to Cira Ross.

On April 11, 2003, Jason Rubin and Cira Ross, in their capacity as co-trustees of

2

the Cira Ross Qualified Domestic Trust (Plaintiffs) filed their operative second amended complaint against Ross, RR&H, and others not party to this appeal. Ross was named in causes of action for fraud and deceit and breach of contract, and both he and RR&H were named in the cause of action for abuse of process. The complaint was based upon Ross and RR&H having filed the two claims against the Estate and the objections to a request for preliminary distribution of funds from the Estate to Cira Ross's qualified domestic trust (to which she had assigned all of her rights in the Estate), when Ross had released the right to do so in the Agreement.

Defendants' demurrer to the second amended complaint was overruled as to all of the causes of action involving them. They subsequently filed their answer to the second amended complaint on May 28, 2003. Then, on June 16, 2003, Ross and RR&H filed their special motion to strike those causes of action that applied to them.

The motion was delayed for a time while the parties argued over scheduling the deposition of Rafael Rose (Rose), a partner in RR&H. The Plaintiffs filed their opposition to the anti-SLAPP motion on December 3, 2003. The Defendants filed objections to evidence produced by the Plaintiffs in their opposition. At a hearing on December 19, 2003, the trial court requested further briefing on certain issues, including the evidentiary objections, and continued the hearing. Both sides filed their supplemental briefing and the Plaintiffs included additional evidence. The Defendants objected to the Plaintiffs' evidence in support of their supplemental brief, claiming that it was not authorized by the court and was tardy. The trial court overruled the Defendants' objections and ultimately denied the Defendants' special motion to strike on March 25,

2004. This appeal followed.

## DISCUSSION

Code of Civil Procedure section 425.16, subdivision (b)(1) provides that "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." The statute further provides that "[a]s used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (Code Civ. Proc., § 425.16, subd. (e).)

In ruling on an anti-SLAPP motion, a court must engage in a two-step process. It must first determine whether a defendant has shown that the challenged cause of action arises out of protected activity. Then, if that showing is made, it must determine whether

4

79

the plaintiff has demonstrated a probability of prevailing on the claim. (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 (*Equilon*).) "These determinations are legal questions subject to our de novo review. [Citations.]" (*Tuchscher Development Enterprises, Inc. v. San Diego Unified Port Dist.* (2003) 106 Cal.App.4th 1219, 1232.)

A. *Waiver*

Prior to engaging in this analysis, however, we must consider the Plaintiffs' arguments that the Defendants waived their right to file a special motion to strike, both procedurally and contractually. The Defendants claim that the Plaintiffs may not raise this issue because they have not appealed. However, it is the appellant's burden to demonstrate a miscarriage of justice in order to obtain a reversal on appeal. (Cal. Const., art. VI, § 13.) It is also the appellant's burden to demonstrate that a different result would have been probable had the trial court not erred as alleged. (Code Civ. Proc., § 475.) A party may ask the appellate court to review "any intermediate ruling, proceeding, order or decision which involves the merits or necessarily affects the judgment or order appealed from or which substantially affects the rights of a party . . . for the purpose of determining whether or not the appellant was prejudiced by the error or errors upon which he relies for reversal or modification of the judgment from which the appeal is taken." ( Code Civ. Proc., § 906.) Thus, the Plaintiffs may challenge the ruling that there was no waiver to show that the Defendants were not prejudiced by the alleged error in denying the special motion to strike.

Procedurally, the Plaintiffs claim that by filing both a demurrer and an answer to

5

the second amended complaint prior to filing a special motion to strike, the Defendants waived their right to file such a motion. The Plaintiffs cite California Rules of Court, rule 329, which states, in part, "A notice of motion to strike shall be given within the time allowed to plead, and if a demurrer is interposed, concurrently therewith, and shall be noticed for hearing and heard at the same time as the demurrer." However, Code of Civil Procedure section 425.16 provides its own time limit for filing a special motion to strike. It provides, in subdivision (f) that "[t]he special motion may be filed within 60 days of the service of the complaint or, in the court's discretion, at any later time upon terms it deems proper." Since either an answer or a demurrer must be filed within 30 days of the filing of a complaint (Code Civ. Proc., §§ 412.20, 430.40), and a special motion to strike may be filed up to 60 days after service of the complaint, it follows that the Legislature intended that special motions to strike under Code of Civil Procedure section 425.16 constitute an exception to the general rule requiring motions to strike being filed within the time to otherwise plead. It also follows naturally therefrom that the Legislature contemplated that special motions to strike could be filed up to 30 days after another responsive pleading. Applying the Plaintiffs' analysis would result in an absurdity since the result of a defendant's waiting 60 days to file a special motion to strike without having first filed a responsive pleading would be a default, which would preclude the filing of a special motion to strike. (*Devlin v. Kearny Mesa AMC/Jeep/Renault, Inc.* (1984) 155 Cal.App.3d 381, 385-386.) The law must be interpreted so as to avoid absurdities where possible. (*Allen v. Sully-Miller Contracting Co.* (2002) 28 Cal.4th 222, 227.) Thus, we must conclude, from the language of Code of Civil Procedure section

6

81

425.16, subdivision (f), that the Defendants did not waive their right to file a special motion to strike when they filed a demurrer and an answer first.

Citing *Navellier v. Sletten* (2002) 29 Cal.4th 82 (*Navellier*), the Plaintiffs also claim that because in the Agreement they contracted not to file the claims that they did, the Defendants contractually waived their right to file a special motion to strike. The Plaintiffs' claim is a misconstruction of the Supreme Court's holding. The court's primary concern in *Navellier* was with the first prong of the anti-SLAPP analysis, whether the challenged cause of action arises out of protected activity. In essence, the court determined that lawsuits such as this one, based on statements made in a settlement agreement and release that was allegedly subsequently breached, are indeed covered by the anti-SLAPP statute. (*Id.* at pp. 89-95.) In reasoning this conclusion, the court explained that the plaintiffs were not, as they claimed, barred by Code of Civil Procedure section 425.16 from pursuing their breach of contract and fraud claims based on the release. Rather, they bore the burden, under the second prong of the anti-SLAPP analysis, of "appending the alleged agreement to an affidavit stating the facts upon which the defendant's liability is based, as the anti-SLAPP statute provides [citation] . . . ." (*Navellier, supra*, 29 Cal.4th at p. 94.) If the plaintiffs, in the second prong, could show that the defendant had indeed signed a release that there would be no exercise of the right to petition the courts, then the defendant would have essentially "'waived'" the protection of the anti-SLAPP statute. (*Ibid.*) At that point, application of the statute would not result in a dismissal because the plaintiff would have demonstrated a probability of prevailing on its claim. Thus, the defendant would not be protected by it. *Navellier*

7

82

therefore does not support the Plaintiffs' assertion that the Defendants waived their right to file a special motion to strike. Rather, it stands for the proposition that upon a proper showing by the Plaintiffs, the Defendants may not be entitled to have their motion granted.

B. *The Challenged Action Arises Out of Protected Activity*

The Defendants assert that the action is clearly covered by the anti-SLAPP statute because they are being sued for engaging in their right to petition the court for redress. (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1115 (*Briggs*); *Church of Scientology v. Wollersheim* (1996) 42 Cal.App.4th 628, 648, disapproved in part by *Equilon, supra,* 29 Cal.4th at p. 68, fn. 5.) The Defendants are correct. Code of Civil Procedure section 425.16 does apply to actions brought due to a defendant's having filed claims in court and for making statements in relation to a judicial proceeding, and no specific public policy interest need be raised. (*Navellier, supra,* 29 Cal.4th at pp. 89-94; *Mattel, Inc. v. Luce, Forward, Hamilton & Scripps* (2002) 99 Cal.App.4th 1179, 1188; *Chavez v. Mendoza* (2001) 94 Cal.App.4th 1083, 1087.) *Ericsson GE Mobile Communications, Inc. v. C.S.I. Telecommunications Engineers* (1996) 49 Cal.App.4th 1591,[1] cited by the Plaintiffs, is not contrary to this rule. It did not involve the SLAPP defendant's having filed a lawsuit, and it was decided prior to the Supreme Court's

---

[1] The *Ericsson* case has been overruled, in part, by the Supreme Court in both *Equilon, supra,* 29 Cal.4th at page 68, footnote 5, and *Briggs, supra,* 19 Cal.4th at page 1123, footnote 10. The second case cited by the Plaintiffs on this issue, *Los Carneros Community Associates, Inc. v. Penfield & Smith Engineers, Inc.* (1998) 65 Cal.App.4th 168, was depublished by the Supreme Court.

8

decision in *Briggs, supra*, 19 Cal.4th at page 1123, in which it was determined that Code of Civil Procedure section 425.16, subdivision (e), clauses (1) and (2) do not have a separate requirement that an issue of public interest be implicated.

C. *The Plaintiffs Demonstrated a Probability of Success on the Merits*

In order to establish the probable validity of a claim subject to a special motion to strike, a plaintiff must, through its pleadings and evidentiary submissions, show that the complaint is legally sufficient and supported by facts that, if deemed true, would support judgment in the plaintiff's favor. (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821 (*Wilson*).) The Supreme Court has recognized that the plaintiff, in order to meet its burden under this prong, need only make a minimal showing of merit. (*Navellier, supra*, 29 Cal.4th at pp. 89, 93-94; *Wilson, supra*, 28 Cal.4th at p. 821.) A defendant's contrary showing, on the other hand, must defeat the plaintiff's showing as a matter of law. (*Wilson, supra*, 28 Cal.4th at p. 821.)

As to each of the Plaintiffs' causes of action for fraud and breach of contract, Ross, the sole named defendant, raises the same three arguments on appeal. He asserts that the Plaintiffs failed to provide any evidence in support of the existence of (1) an agreement or representation by Ross, (2) Ross's assignment of a claim to RR&H, or (3) damages. Ross asserts that the Agreement was not properly authenticated and therefore was not evidence. Essentially then, on this point Ross raises only a question of the admissibility of evidence. Overruling the Defendants' objection, the trial court found that the Agreement had been sufficiently authenticated and allowed the evidence. We review a trial court's decision with respect to the admission of evidence for abuse of discretion.

*(Dart Industries, Inc. v. Commercial Union Ins. Co.* (2002) 28 Cal.4th 1059, 1078.) In order for the trial court to abuse its discretion, its decision must exceed the bounds of reason by being arbitrary, capricious, or patently absurd. Where the facts give rise to more than one reasonable inference, we may not substitute our inferences for those of the trial court. *(In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319.)

There are any number of methods by which an article may be authenticated. (Evid. Code, § 1410.) Authentication requires only that it be shown that the writing is what the proponent of the evidence claims it is. (Evid. Code, § 1400.) Here, the attorney for the Plaintiffs, Mitchell Sussman, declared under penalty of perjury, based upon his personal knowledge, that the Agreement provided in opposition to the special motion to strike was a true and correct copy of the Agreement that had been executed by the Defendants on April 9, 2001. Ross claims this is insufficient because the attorney did not indicate the basis for his personal knowledge. However, the second amended complaint, which, contrary to the assertion of Defendants' counsel at oral argument, the trial court was also required to consider (*Wilson, supra,* 28 Cal.4th at p. 821), states, in paragraph 16, that Mitchell Sussman was Cira Ross's attorney at all times during the course of the probate case concerning Ysaac Ross's estate. Mr. Sussman also stated to the trial court that he was the attorney of record for Cira Ross at the time the Agreement was entered into and had the original Agreement in his client file. It may be reasonably inferred from that evidence that the document attached to the opposition was the Agreement. We cannot state that the trial court, in so deciding, acted in an arbitrary, capricious or patently absurd fashion.

10

85

In addition, Cira Ross submitted a declaration in conjunction with the supplemental opposition filed by the Plaintiffs, in which she declared that she entered the Agreement and that a true and correct copy of it was attached. Mitchell Sussman also submitted an additional declaration stating that he was Cira Ross's attorney, negotiated the Agreement and maintained possession of the original, a true and correct copy of which was attached. This evidence is undoubtedly sufficient to authenticate the Agreement.

The Defendants objected to this evidence as having been beyond the order of the trial court and therefore tardy. However, those objections were overruled by the trial court. Ross argues on appeal that the trial court erred because, as a matter of fairness, it should not have considered any tardy evidence. The trial court has the power to provide for the orderly conduct of its proceedings and may amend its orders and processes to effect justice. (Code Civ. Proc., § 128, subd. (a)(3) & (8).) "It is also well established that courts have fundamental inherent equity, supervisory, and administrative powers, as well as inherent power to control litigation before them. [Citation.]" (*Rutherford v. Owens-Illinois, Inc.* (1997) 16 Cal.4th 953, 967.) The trial court had not issued any order preventing the parties from submitting additional evidence in support of their supplemental briefing. Had it believed that the Plaintiffs' action in doing so was unacceptable or improper, it would have sustained the Defendants' objections. Ross points to no statute or case that supports his assertion that the trial court erred by overruling the objections. Under these circumstances we cannot conclude that it abused its discretion in doing so. We must conclude that the Plaintiffs did provide sufficient

evidence of an Agreement entered by Ross to establish a probability of prevailing on its claims for breach of contract and fraud.

Ross also claims that there was no evidence that he had ever assigned any claim that he may have had against the Estate to RR&H. However, in his opening brief on appeal Ross utterly fails to explain why such an assignment was a necessary element of the Plaintiffs' causes of action for fraud and breach of contract. This in itself is fatal to his argument as it is an appellant's burden to demonstrate error meriting the relief sought on appeal. (*Iliff v. Dustrud* (2003) 107 Cal.App.4th 1201, 1210.)

Even if this was not the case, the Plaintiffs have made the minimal showing of merit necessary to survive the special motion to strike. In the Agreement Ross represented that he released the Estate and Cira Ross from all claims that he may have had against them, as an individual or jointly, and further represented that he had not assigned any rights or claims against the Estate or Cira Ross to any person or entity. The Plaintiffs also submitted deposition testimony and other evidence indicating that the claims filed by RR&H against the Estate were based solely upon an alleged promise that Ysaac Ross had made to Ross himself, in exchange for work that Ross had done, long before RR&H existed. The creditor's claim itself also supported the Plaintiffs' position as to the $1,500,000 claim. It reasonably follows from the evidence that the only way RR&H could possibly have had a basis for the claims it filed was through Ross. Reasonable inferences based upon the evidence are not speculation. (*Carrau v. Marvin Lumber & Cedar Co.* (2001) 93 Cal.App.4th 281, 289 [if speculation, then not a reasonable inference from evidence].) Ross's argument that there was no evidence, only

speculation, fails. Again, even had Ross made a cognizable argument on the point, the Plaintiffs have made the minimal showing of merit necessary to proceed with their action.

Finally, as to the causes of action for breach of contract and fraud, Ross argues that there was no evidence that the Plaintiffs had sustained any damages, and without such evidence the Plaintiffs have not made a showing that they were likely to prevail on those claims. Essentially, Ross claims that since the claims and objection were filed in the probate matter, the only entity that could have been damaged was the Estate. This facile assertion ignores the reality that the Plaintiffs were entitled to substantial distributions from the Estate and therefore were affected by claims and objections against it. The Agreement shows that Cira Ross was damaged in the amount of $1,000,000, which she gave to Ross in exchange for the promises that he breached. Whether or not Ross had actually received the money, Cira Ross was contractually bound to pay it, allegedly in exchange for a false and breached promise. That, in itself, is some minimal evidence of damage, which, if credited, would support a judgment for the Plaintiffs. Further, it is reasonable to conclude that the judge handling the probate of the Estate determined that it was not wise to allow a preliminary distribution of $15,000,000 from the Estate when there were outstanding claims against it for $1,526,861.72. Thus, there was additional evidence that could support a conclusion that RR&H's claims delayed distribution to the Plaintiffs of a substantial sum of money. And, when money is wrongfully detained, the fact of the wrongful detention is sufficient to prove damages. (*Gray v. American Surety Co.* (1954) 129 Cal.App.2d 471, 472-475.)

Ross has not demonstrated that the Plaintiffs failed to produce sufficient evidence

13

88

to make a minimal showing of merit on their causes of action for fraud and breach of contract. Thus, as to those causes of action, the trial court's order is affirmed. We consider the remaining cause of action next.

The Defendants assert four grounds for their claim that the Plaintiffs did not demonstrate a likelihood of prevailing on their cause of action for abuse of process: (1) there is no evidence that Ross or RR&H was acting in any capacity other than as the representative of the other when they filed their claims and objection in the Estate proceedings; (2) there is no evidence of an ulterior purpose for the filing of any of the claims or objection at issue; (3) there is no evidence that the claims or objection were not filed in the regular conduct of the probate proceeding; and (4) there is no evidence of damages.

As to the first two of these claims, once again the Defendants do no more than state them. There is no reasoned argument in favor of their position, nor is there any citation to the record or to any law. Such briefing is wholly inadequate and we deem these assertions waived. (*Osborn v. Hertz Corp.* (1988) 205 Cal.App.3d 703, 707, fn. 2; *Horowitz v. Noble* (1978) 79 Cal.App.3d 120, 138-139.)

As to their third and fourth arguments, which they generally treat together, the Defendants repeatedly assert the same outlandish contention, that is, that the objections were successful and therefore were both regular and resulted in no damage. In the first place, the only evidence in the record, the probate court's minute order, demonstrates that the objections were not successful, but were overruled. The simple fact that the trial court granted the petition as modified, reducing the distribution from $15,000,000 to

14

89

$10,000,000 does not establish otherwise. There is simply no evidence that the reduction had anything to do with the objections. More fundamentally, according to the Agreement, the Defendants gave up their right to file any objection, regardless whether it was meritorious or not.[2] That is the point of the Plaintiffs' action. The Defendants' contention of success does nothing to advance their cause.

The Defendants cite *Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc.* (1986) 42 Cal.3d 1157, 1169, for the proposition that the allegation that a lawsuit was filed for an improper purpose does not support an abuse of process cause of action. In reaching this conclusion, the court was careful to distinguish between the need for an ulterior purpose in an abuse of process claim and the need for an absence of probable cause in a malicious prosecution action. (*Id.* at pp. 1169-1170.) That case is distinguishable since, here, the gravamen of the complaint is not that the Defendants undertook their actions without probable cause, but rather that they undertook their actions knowing that they were contractually barred from doing so, for the ulterior purpose of depriving the Plaintiffs of the benefit of the contract.

Finally, there is evidence that the objections delayed the distribution of $10,000,000 from the Estate to the Plaintiffs from October 1, 2002, to December 13, 2002. The Plaintiffs also submitted declarations indicating that damage had been

---

[2] We are not persuaded by the assertion by Defendants' counsel that the release did not cover objections because it did not use that term. The language of the release is very broad and it is clear to this court that it comprised of the Defendants' objections.

15

sustained as a result of the delay caused by the Defendants' objections.[3] As we observed in conjunction with our discussion regarding the causes of action against Ross alone, the delay is evidence of damages sufficient to meet the minimal showing of merit required to defeat a special motion to strike. The Defendants have failed to carry their burden on appeal, and therefore have not demonstrated that they are entitled to the relief they seek.

DISPOSITION

The order is affirmed. Plaintiffs to recover their costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ<br>P. J.

We concur:

RICHLI
J.

KING
J.

---

[3] At oral argument, counsel for the Defendants took umbrage with much of this court's analysis and description of the facts of this case. For example, he argued that we were mistaken in our conclusion that the Plaintiffs' claims were based on the Defendants having taken actions that they were contractually barred from taking, because RR&H was not a signatory to the contract. However, as we have pointed out, the evidence supports the conclusion that any claim that RR&H had was assigned to it by Ross. The contract bars any and all claims by Ross's assigns. Therefore, the evidence supports the conclusion that RR&H was contractually barred from making its claims. Further, counsel argued that we erred in concluding that the Plaintiffs adduced evidence that they were damaged by RR&H on account of its objection, since RR&H had not filed an objection. As counsel for the Plaintiffs correctly pointed out, the docket shows that RR&H indeed filed an objection to the distribution of the estate on October 28, 2002, in its capacity as a claimed creditor of the estate. Counsel for the Defendants is admonished that he should carefully and honestly review the record, as this court has, and is reminded of his duty to fairly and accurately represent the record, both in his briefs and at argument.



I, Stephen M. Kelly, Clerk/Administrator of the Court of Appeal, Fourth Appellate District, State of California, do hereby Certify that the preceding and annexed is a true and correct copy of _Opinion_ as shown by the records of my office.
WITNESS my hand and the seal of the Court
Dated _January 12, 2005_
STEPHEN M. KELLY, CLERK/ADMINISTRATOR
By _Madeline Mozee_
Deputy Clerk